JEFFREY W. BATES, Chief Judge.
 

 Sharon Ewanchuk (“Ewanchuk”) appeals from a judgment denying her claim for specific performance of an oral agreement to buy two rare Boston terrier puppies from Shelley Mitchell (“Mitchell”). The trial court denied relief because it concluded the oral agreement lacked the necessary definiteness to be enforced, in that there was “no meeting of the minds” between Ewanchuk and Mitchell concerning how the puppies were to be delivered.
 
 [1]
 
 
 *464
 
 Ewanchuk claims the trial court should have granted her request for specific performance because all of the required elements of an enforceable contract were present, and Mitchell simply refused to deliver the puppies. We affirm because Ewanchuk’s own testimony showed that Mitchell’s decision not to deliver the puppies occurred after Ewanchuk repudiated the contract by insisting upon a mode of delivery to which she was not entitled, absent Mitchell’s agreement.
 

 I. Standard of Review
 

 In this court-tried case, our review is governed by Rule 84.13(d).
 
 [2]
 
 We must affirm the trial court’s judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.
 
 Murphy v. CarrOn,
 
 536 S.W.2d 30, 32 (Mo. banc 1976);
 
 Lee v. Hiler,
 
 141 S.W.3d 517, 520 (Mo.App.2004).
 
 [3]
 
 A judgment is presumed correct, and the appellant has the burden of proving it erroneous.
 
 Wingate v. Griffin,
 
 610 S.W.2d 417, 419 (Mo.App.1980). We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences.
 
 Arndt v. Beardsley,
 
 102 S.W.3d 572, 574 (Mo.App.2003). Credibility of the witnesses and the weight to be given to their testimony is for the trial court, which is free to believe none, part, or all of the testimony of any witness.
 
 Keller v. Friendly Ford, Inc.,
 
 782 S.W.2d 170, 173 (Mo.App.1990). We defer to the trial judge’s superior opportunity to assess the witnesses’ credibility.
 
 Harris v. Lynch,
 
 940 S.W.2d 42, 45 (Mo.App.1997). No such deference is afforded the trial court, however, when we review its conclusions of law. We independently evaluate whether the trial court properly declared or applied the law to the facts presented.
 
 Mortenson v. Leatherwood Const., Inc.,
 
 137 S.W.3d 529, 531 (Mo.App.2004);
 
 Schubert v. Trailmobile Trailer, L.L.C.,
 
 111 S.W.3d 897, 899 (Mo.App.2003). Our summary of the evidence presented at trial, which is set forth below, has been prepared in accordance with these principles.
 

 II. Facts and Procedural History
 

 Ewanchuk and Mitchell are both in the business of breeding and raising registered Boston terriers. Ewanchuk has been licensed in this business for twelve years and resides in Alberta, Canada. Mitchell has been licensed in this business for three years and operates a kennel in Cabool, Missouri. Mitchell sold only puppies, and she mainly marketed her animals to brokers that purchased animals for resale to pet stores.
 

 On January 20, 2003, one of Mitchell’s breeding females whelped two male Boston terrier puppies (“the puppies”). Rather than being the black and white color normally found in Boston terriers, the puppies were red and white in color. This made them very unique and desirable animals.
 

 
 *465
 
 On February 20, 2003, Mitchell offered to sell the puppies by placing an ad on the internet. That same day, Ewanchuk responded to the ad by leaving a message on Mitchell’s answering machine. In the message, Ewanchuk expressed her interest in purchasing the puppies. She asked Mitchell to return the call, which Mitchell did. Ewanchuk and Mitchell had several more telephone conversations about the puppies, and Mitchell sent photographs of them to Ewanchuk. During these conversations, Ewanchuk did not commit to purchasing the puppies because they were still too young.
 

 On March 21, 2003, Mitchell called Ewanchuk to inform her that the puppies were eight weeks old and were going to be sold to a broker the following Monday unless Ewanchuk agreed to buy them. The timing of the sale was very important to Mitchell because pet stores would not purchase puppies older than nine weeks of age, so she had to get them to a broker immediately if Ewanchuk did not buy them. Otherwise, the value of the puppies would decline because Mitchell would no longer be able to sell them to a broker or a pet store.
 

 Mitchell initially priced the puppies at $350 each, but she agreed to sell the puppies for a total of $600 because Ewanchuk wanted to buy both of them. Ewanchuk provided Mitchell with a credit card number which was used to charge the $600 payment.
 

 Although Ewanchuk and Mitchell were able to agree on the puppies’ price, they were unable to agree on when and how the puppies would be delivered to Ewanchuk. Because the puppies were only two months old, Ewanchuk wanted Mitchell to keep the puppies until they were three to four months old and fully vaccinated. Mitchell, however, insisted that Ewanchuk accept delivery by April 15, 2003.
 

 Similarly, Ewanchuk and Mitchell were unable to reach any agreement concerning the mode of delivery to be used. Ewan-chuk initially wanted both puppies shipped to her by air in one container, but Mitchell would not do so.
 
 [4]
 
 She was concerned that the puppies might fight if they were shipped together. Ewanchuk said that she would try to get her husband or son, who were both truck drivers, to come pick the puppies up from Mitchell. Ewanchuk, however, was unable to make suitable arrangements to get this done. Ewanchuk also proposed that Mitchell bring the puppies to Ewanchuk in Oklahoma while she was on a trip to Texas to pick up some other dogs. Mitchell was willing to do so, but Ewanchuk provided no definite date as to when the trip would occur. Around April 1, 2003, Ewanchuk did travel from Canada to Texas to pick up the other dogs as planned. Because Ewanchuk failed to advise Mitchell the trip was underway, the planned delivery in Oklahoma did not occur.
 
 [5]
 

 After these events took place, Mitchell spoke to Ewanchuk by telephone. During the call, Ewanchuk said she wanted the puppies delivered by air on April 15, 2003. On that date, Ewanchuk telephoned Mitchell to discuss shipping arrangements. In this telephone call, Ewanchuk insisted
 
 *466
 
 Mitchell ship the puppies together in one crate. Ewanchuk testified that “I wanted the two puppies shipped together in one kennel, and they [Mitchell and her husband] refused to do that.” Mitchell would not ship the three-month-old puppies together because she believed they “would fight and that it was not safe for the puppies to be in the same crate at that age.” Mitchell was willing to send one puppy in one crate, but Ewanchuk wanted both delivered together. Ewanchuk testified that Mitchell “repudiated” the contract during that call and said she would refund Ewanchuk’s money.
 

 After April 15, 2003, Ewanchuk made no further arrangements to have the puppies delivered to her and had no further direct contact with Mitchell. Ewanchuk later hired an attorney, who filed suit on her behalf on May 16, 2003, seeking specific performance of the oral agreement and injunctive relief to prevent Mitchell from selling the puppies to someone else. After suit was filed but before Mitchell read the petition, she sold both puppies for $350 each to other buyers.
 
 [6]
 
 After Ewanchuk learned the puppies had been sold, she was granted leave to file an amended petition that added a count seeking actual and punitive damages from Mitchell.
 

 After hearing the foregoing evidence presented at trial on November 26, 2003, the trial court entered judgment for Mitchell and ordered that the $600 she had tendered into court be paid to Ewanchuk.
 
 [7]
 
 The trial court found for Mitchell, in pertinent part, for the following reason:
 

 [T]here was no meeting of the minds as to one of the essential terms of the contract, namely when the puppies would be shipped to the Plaintiff in Canada, and how the shipment would be arranged.... Further, a dispute arose as to whether the puppies should be shipped in one crate or two crates. Therefore, the Court finds that all of the essential terms of the contract were not agreed upon and that the Agreement lacked a definiteness necessary for its enforcement.
 

 Ewanchuk appealed.
 

 III. Discussion and Decision
 

 In Ewanchuk’s single point on appeal, she claims the trial court should have granted specific performance because: (1) the required elements of an enforceable contract were present; and (2) Mitchell breached the contract by refusing to deliver the puppies. The oral agreement between Ewanchuk and Mitchell was a contract for the sale of goods within the meaning of Missouri’s version of the Uniform Commercial Code (“UCC”).
 
 See
 
 § 400.2-105(1);
 
 Central Production Credit Ass’n v. Hopkins,
 
 810 S.W.2d 108, 114 (Mo.App.1991) (oral agreement to purchase 100 cattle was a contract for the sale of goods governed by the UCC).
 
 [8]
 
 Therefore, this transaction in goods is governed by the law of sales found in Article 2 of the UCC, which is codified in § 400.2-101 through § 400.2-725.
 

 In the first prong of Ewanchuk’s bifurcated argument, she contends the tri
 
 *467
 
 al court misapplied the law by concluding that the parties’ failure to agree on the terms of delivery made their agreement too indefinite to be enforceable. We agree. We begin our analysis by noting that under the UCC, “[e]ven though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.” § 400.2-204(3);
 
 see also Computer Network, Ltd. v. Purcell Tire & Rubber Co.,
 
 747 S.W.2d 669, 674 (Mo.App.1988). Here, it is clear the parties did intend to make a contract because: (1) Mitchell admitted the contract’s existence in her answer to the amended petition; and (2) she accepted full payment in advance for the puppies.
 
 See
 
 § 400.2-201(3)(b) and (c);
 
 Cargill Inc., Commodity Marketing Division v. Hale,
 
 537 S.W.2d 667, 669 (Mo.App.1976) (defendant’s testimony constituted an admission of contract and prohibited defendant from asserting the statute of frauds as a defense). The manner and place of delivery was left unresolved by the parties’ negotiation. Because the parties failed to agree upon the terms of delivery, the UCC cured this omission for them by specifying both the time and place of delivery. Section 400.2-309(1) required that the puppies be delivered within a reasonable time. Section 400.2-308(a) required that delivery take place at Mitchell’s place of business in Cabool, Missouri.
 

 The trial court misapplied the law by concluding that the parties’ agreement “lacked a definiteness necessary for its enforcement.” On appeal, however, we are “primarily concerned with the correctness of the trial court’s result, not the route taken by the trial court to reach that result.”
 
 Business Men’s Assur. Co. of America v. Graham,
 
 984 S.W.2d 501, 506 (Mo. banc 1999). “[T]he judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient.”
 
 Id.
 

 The second prong of Ewanchuk’s argument is that Mitchell breached the contract by refusing to deliver the puppies. We reject this aspect of Ewanchuk’s argument. The trial court entered judgment for Mitchell after concluding the contract was unenforceable. This conclusion is correct, but for a different reason than the one upon which the trial court relied.
 

 It is well-settled that a party is bound by his own testimony which is not corrected or explained.
 
 Taylor v. Vestal,
 
 304 S.W.2d 820, 823 (Mo.1957);
 
 Steele v. Kansas City Southern Ry. Co.,
 
 265 Mo. 97, 175 S.W. 177, 179-80 (1915);
 
 Wuerz v. Huffaker,
 
 42 S.W.3d 652, 658 (Mo.App.2001). At the trial, Ewanchuk testified unequivocally that she had always wanted the puppies shipped to her by air in the same container. She also testified unequivocally that, from the outset of the negotiation, Mitchell absolutely refused to do so because she believed the puppies would fight if they were shipped together. The issue about the mode of shipping came to a head during the telephone call on April 15, 2003. Ewanchuk insisted the puppies be shipped to her in one crate, and Mitchell refused. Mitchell offered to ship one dog in one crate, but Ewanchuk was adamant that she wanted the puppies shipped together. At that point, Mitchell cancelled the contract and said she would refund Ewanchuk’s money. Thereafter, Ewanchuk made no further arrangements to have the puppies delivered to her, and she never contacted Mitchell directly again.
 

 As noted above, the parties failed to reach an agreement upon the manner and place of delivery during their negotiation. Therefore, the UCC supplied that term of the agreement by requiring Ewanchuk to pick up the puppies at Mitchell’s place of
 
 *468
 
 business in Cabool. Ewanchuk did not pick up the puppies by April 15, 2003. Instead, on the date delivery was due to occur, Ewanchuk insisted that Mitchell ship both puppies by air in one crate to Alberta, Canada. It was this demand which caused Mitchell’s refusal to deliver the puppies and consequent cancellation of the contract. Absent Mitchell’s agreement, the UCC did not give Ewanchuk the right to receive delivery of the puppies in this fashion.
 

 Both by decisional law and statute, Missouri recognizes the doctrine of anticipatory repudiation.
 
 Missouri Public Service Co. v. Peabody Coal Co.,
 
 583 S.W.2d 721, 724 (Mo.App.1979); § 400.2-610. A party repudiates a contract by manifesting a positive intention not to perform by words or conduct.
 
 Gateway Aviation, Inc. v. Cessna Aircraft Co.,
 
 577 S.W.2d 860, 862 (Mo.App.1978). Section 400.2-610 states in pertinent part that, “[w]hen either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may ... (b) resort to any remedy for breach (section 400.2-703 or section 400.2-711).... ” Upon a buyer’s repudiation of the contract, in whole or in part, one of the seller’s available remedies is cancellation of the contract. § 400.2-703(f).
 

 Here, Ewanchuk’s own testimony demonstrated that she insisted upon a mode of delivery (both puppies in one crate) and a place of delivery (Alberta, Canada, via air transportation) to which Mitchell had not agreed and to which Ewanchuk was not entitled under the UCC.
 
 [9]
 
 After making this impermissible demand, Ewanchuk also testified that she never contacted Mitchell directly again and made no further arrangements to have the puppies delivered to her.
 

 Thus, Ewanchuk’s trial testimony, by which she was bound, proved that she repudiated the contract on April 15, 2003. Since the puppies were then 12 weeks old, Ewanchuk’s repudiation impaired the value of the contract to Mitchell because she could no longer sell the puppies to a broker or pet store. Based on this repudiation, Mitchell was authorized to cancel the contract, which she did.
 
 See Scullin Steel Co. v. Paccar, Inc.,
 
 708 S.W.2d 756, 761 (Mo.App.1986) (because buyer repudiated contract, the value of the contract to seller was impaired and seller was entitled to resort to statutory remedies for breach found in § 400.2-703).
 

 In conclusion, the trial court properly denied Ewanchuk’s request for specific performance and other relief because the contract was unenforceable. The reason the contract was unenforceable, however, was because it had been cancelled by Mitchell after repudiation by Ewanchuk. Although the trial court did not rely on the doctrine of repudiation as the basis for its decision, we may do so to uphold the judgment based on the record before us.
 
 See Fesperman v. Silver Dollar City, Inc.,
 
 796
 
 *469
 
 S.W.2d 384, 387-88 (Mo.App.1990). The judgment of the trial court is affirmed.
 

 PARRISH, P.J., and BARNEY, J„ Concur.
 

 [1]
 

 . Under the objective theory of contracts applied in this state since 1892, the stress is on
 
 *464
 
 the outward manifestation of assent made to the other party, in contrast to the older idea that a contract represented a true meeting of the minds.
 
 Brock v. Blackwood,
 
 143 S.W.3d 47, 59-60 (Mo.App.2004). This outward manifestation of mutual assent to the essential terms of the contract is more accurately described as "mutuality of agreement.”
 
 Arndt v. Beardsley, 102
 
 S.W.3d 572, 575 (Mo.App.2003).
 

 [2]
 

 . All references to rules are to the Missouri Rules of Civil Procedure (2004).
 

 [3]
 

 .
 
 Murphy
 
 interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.
 

 [4]
 

 . During Ewanchuk’s direct examination, she testified that, "I also wanted them shipped together because up until the puppies are six months old, they can go together in the same kennel, and this she refused to do; even at that time, she refused to ship them at that time together. And I kept trying to get her to do that, and she absolutely refused."
 

 [5]
 

 . Mitchell testified that Ewanchuk did not call at any time during the trip because she claimed to have lost Mitchell’s telephone number. This number, however, was listed in the phone book.
 

 [6]
 

 . The puppies were sold to other buyers on May 17 and May 30, 2003. One of the purchasers was Colleen Whittington, who worked for Ewanchuk's attorney. Whittington surreptitiously purchased the puppy for Ewan-chuk, and she now has possession of this dog.
 

 [7]
 

 . Mitchell had tried to credit the $600 purchase price back to Ewanchuk's credit card, but Mitchell no longer had the credit card number. At trial, Mitchell tendered a cashier’s check made out to Ewanchuk in the amount of $600, which the trial court accepted pending its resolution of the dispute.
 

 [8]
 

 .All references to Missouri statutes are to RSMo (2000).
 

 [9]
 

 . That Mitchell testified to a somewhat different account of the events occurring on April 15, 2003, is immaterial. If a party testifies "unequivocally and understandingly to a material fact peculiarly within his own personal knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the contrary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding.”
 
 Hecker v. Schwartz,
 
 426 S.W.2d 22, 25 (Mo.1968).
 
 See also Steward v. Baywood Villages Condominium Ass’n,
 
 134 S.W.3d 679, 683 (Mo.App.2004) (if a party testifies to facts within his or her own knowledge that defeat his or her case, that party cannot rely on contradictory testimony to make a submissible case).