**Charles Robert WATSON and Carolyn Watson, Respondents,**

v.

**Robert K. MENSE and Carolyn K. Mense, Appellants.**

No. SC 89936.

Supreme Court of Missouri, En Banc.

Nov. 17, 2009.

Rehearing Denied Dec. 22, 2009.

R. Timothy Bickhaus, Macon, MO, for appellants.

John W. Briscoe, Andrew W. Briscoe, New London, MO, for respondents

WILLIAM RAY PRICE, JR., Chief Justice.

## I. Introduction

The Watsons brought actions for ejectment, trespass, quiet title and the establishment of an easement by prescription against the Menses regarding parcels of farmland. The trial court found in favor of the Watsons. The trial court's judgement as to ejectment damages is reversed. The trial court is required to enter a more definite legal description of the new borderline between the party's parcels and the easement by prescription and to determine the fair rental value of the disputed parcel. In all other respects, the judgment is affirmed. The case is remanded.

## II. Factual Background

This is a dispute over farmland in Macon County. Charles and Carolyn Watson own two 40–acre, square parcels that are connected at a single diagonal point: one to the northwest and the other to the southeast. A path and a gate some 16 to 24 feet wide connect the two Watson parcels at the corner intersection. Robert and Carolyn Mense own a single 80–acre rectangular parcel that abuts both of the Watsons' parcels: it is south of the northwest parcel and west of the southeast parcel.

Starting in 1958, Charles Watson's mother, Jane Boulton, owned the two parcels and farmed various crops and grazed cattle. Boulton often moved cattle, trucks, and farming combines between the two parcels using the path through the corner intersection. Boulton's neighbor at the time, Frank Bush, owned the Mense parcel. A hedgerow and a fence created the border between the northern Watson tract and Bush's tract. Neither Bush nor Boulton farmed beyond their respective sides of the fence. There was never a dispute about the borderline location. Both parties recognized the fence and hedgerow as the border.

During the 1980s, Bush bulldozed the eastern half of the hedgerow and fence leaving an elevated "hump" of ground behind. However, Bush still never crossed the borderline. The western half of the fence still remained. Eventually, Bush sold his tract to Jim Nelson, who in turn sold it to the Menses in 2006.

The current dispute arose in 2006 when the Menses took title to their parcel. Using the termination point of the eastern property as a reference, Mr. Mense believed the borderline was eight feet to the north of hedgerow hump. In the spring of 2006, Mense planted corn up to that assumed border. In response, Charles Watson erected a post on the eastern side of the "hump," lining up the post with remaining western fence line.

In further response, Mense used his tractor to tear out the post and parked the tractor in front of the diagonal gate between the two Watson parcels. Mense also placed a sign, threatening to arrest anyone who moved the tractor and offering to pay half the cost of a survey. Mr. Watson tried to replace the post some time later, but Mense removed it again.

In the summer of 2006, Mense hired Macon County surveyor Edward Cleaver, who adduced that the true borderline was about eight feet north of the fence erected

by Mr. Watson.[1] On the survey, Cleaver noted the location of the Watson's post and the hump of the hedgerow. During the spring of 2007, Mense planted soybeans up to the Cleaver survey line.

The Watsons then filed suit for ejectment, trespass and quiet title and asked the court to recognize an easement by prescription over the diagonal path between their two parcels and issue an order prohibiting the Menses from interfering with their easement. The Menses counterclaimed, asking for ejectment and trespass damages of their own. Before trial, the Menses consented to judgment quieting title to the record land descriptions, but maintained their contest over the disputed area north of the hedgerow.

The trial court found that the Watsons had established their adverse possession claim through the testimony of Jane Boulton, Charles Watson's mother and predecessor in title, and the testimony of Frank Bush and Jim Nelson who all testified that the hedgerow and fence were respected as the boundary line, and aerial survey photographs that showed cultivation up to the fence line by Boulton and the Watsons. Subsequently, the trial court awarded $75.00 in trespass damages for removal of the two posts and $90.00 as the value of the soybeans wrongfully planted on the Watson parcel. The trial court further found that the movement of equipment and livestock between the two parcels established an easement 24 feet in width and ordered that the Menses no longer inter-

fere with the use of the easement. This appeal followed.

The Menses argue several points on appeal, which may be summarized as follows: First, that the trial court erred in finding that the Watsons adversely possessed the disputed parcel (point I) and awarding to the Watsons both trespass damages (point II) and ejectment damages (point III), and denying the Menses' quiet title action (point VI) and trespass damages (point IX).

Second, the Menses argue error in declaring the width of the easement to be 24 feet (point IV) and ordering the Menses to stop interfering with the easement (point V).

Third, they argue that the trial court erred in drafting a legally insufficient legal description in its final judgment (point VII).[2]

### III. Analysis

#### A. Standard of Review

■■■ The appellate court will affirm the trial court's determination "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976). The trial court is free to believe or disbelieve all, part or none of the testimony of any witness. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc

1. The survey in the record notes the old fence was located in a position 7.2 feet south of the center point of the southeast quarter of Section 21, Township 59 North, R13W going forward in a straight line to a termination point 8.4 feet south of the of the center eastern survey point of the same southeast quarter. The Watson's argue that this is the true borderline.

2. The Menses also argue in point VIII that the judgment is outside the scope of the pleadings because the Watsons consented to judgment that the Menses were *record owners* of the tract. As this suit deals with adverse possession which establishes a *new* title to the land, such an argument is without merit. *See Boeckmann v. Fitzpatrick*, 491 S.W.2d 524, 527 (Mo.1973); *Moran v. Roaring River Development Co.*, 461 S.W.2d 822, 831 (Mo.1970).

1989). When determining the sufficiency of the evidence, an appellate court will accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard all contrary evidence. *Morgan v. Morgan,* 701 S.W.2d 177, 179 (Mo.App.1985).

### B. (Points I–III, VI)

### Adverse Possession

 To acquire title by adverse possession or prescription, possession must be: (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the necessary period of years prior to the commencement of action. *Walker v. Walker,* 509 S.W.2d 102, 106 (Mo.1974). The party claiming ownership by adverse possession has the burden of proving his claim by a preponderance of the evidence. *Shuffit v. Wade,* 13 S.W.3d 329, 335 (Mo.App.2000). The ten year period to confer title by adverse possession need not occur immediately prior the suit. *Moore v. Hoffman,* 327 Mo. 852, 39 S.W.2d 339, 344 (1931). A claimant may tack her period of adverse possession with that of her predecessors in order to meet the ten year requirement. *Kitterman v. Simrall,* 924 S.W.2d 872, 876 (Mo.App.1996). The Menses argue that the Watsons' possession was not adverse because it was not hostile or actual.

 The adverse possession doctrine encourages land owners to bring border disputes in timely fashion, thereby weeding out stale claims. When a border, even though erroneous, is observed by all parties as the boundary for the statutory period, it becomes the true boundary through adverse possession. This Court dealt with almost identical facts more than 50 years ago in *Finck Realty Co. v. Lefler,* 208 S.W.2d 213 (Mo.1948). In *Finck,* a dispute arose between owners of two parcels of farmland over the borderline. *Id.* at 213–

14. For nearly 50 years, defendants' predecessors in title and plaintiff erroneously regarded a fence as the borderline between their two parcels *Id.* A survey revealed that the fence was encroaching over the true borderline onto the defendant's land. *Id.* at 215. This Court held that there need not be a dispute to make the plaintiff's possession adverse to the defendant and that there was sufficient evidence to find actual possession because the plaintiff predecessor in title had cultivated the enclosed land for over 50 years. *Id.*

#### i. Hostile possession

 There need not be a dispute between two adjoining landowners over the location of borderline to satisfy the hostile requirement. *Boeckmann v. Fitzpatrick,* 491 S.W.2d 524, 527 (Mo.1973). The element will be satisfied even if the possessor only mistakenly believes she owns the land and occupies the land in question. *Underwood v. Hash,* 67 S.W.3d 770, 775 (Mo.App.2002); *State ex rel. Edie v. Shain,* 348 Mo. 119, 152 S.W.2d 174, 176 (1941). The lack of a dispute between the Watsons and the Menses' predecessors in title is irrelevant to the hostility requirement. The trial court found that the Watsons believed that they owned the land north of the fence line which is sufficient to meet this element. Under *Murphy,* this finding is not disturbed.

#### ii. Actual possession

The Menses also challenge the "actual" prong of the adverse possession test arguing that the Watsons took no action to possess the contested hedgerow area of land north of the fence line.

 Whether an act constitutes actual possession "depend[s] on the nature and location of the property, the uses to which it can be applied and all the facts

and circumstances of a particular case." *Murphy v. Holman,* 289 S.W.3d 234, 237 (Mo.App. W.D.2009). The element is less strict for wild, undeveloped land. *Martens v. White,* 195 S.W.3d 548, 554 (Mo.App. S.D.2006).

Evidence before the trial court showed that the Watson family had been farming, pasturing and cultivating the land continually as their own since 1958. During this period the land was enclosed by a fence and hedgerow that the Menses' and Watsons' predecessors in title treated as the boundary line. All parties still respected the border, even after the fence and hedgerow were removed. The Watsons and their predecessors in title excluded their neighbors from the disputed area. The trial court explicitly found that the Watsons and Boulton farmed up to fence line for a continuous 45–year period.

This evidence was supported by 45 years worth of aerial survey photos. As required by *Murphy,* an appellate court must give deference to the trial court's factual determinations when sitting as factfinder. There was substantial evidence to support the trial court's finding of actual possession because it found that the Watsons and Boulton farmed up to the fence line.

The hostile and actual elements were met; therefore, the trial court properly found that the Watsons acquired title to the disputed land. Point denied.

### *iii. Trespass Damages*

■■■■ The question now turns to whether there was substantial evidence to support damages for trespass. The trial court found credible Charles Watson's testimony that the two removed posts were worth $75.00. We do not disturb these findings under *Murphy.* Point denied.

### *iv. Ejectment Damages*

■■■■ The Menses correctly argue that the $90.00 in ejectment damages are in error. Damages may also be appropriate relief in ejectment. *Pankins v. Jackson,* 891 S.W.2d 845, 848 (Mo.App.1995). When crops are planted wrongfully, the proper measure of damages in ejectment is not the value of the crops, but the fair rental value of the land for such period as the land owner had been deprived of possession. *Dent v. Dent,* 350 Mo. 560, 166 S.W.2d 582, 587–88 (1942). The Watsons were awarded $90.00, the value of the soybeans grown on the disputed land. While this is some evidence from which fair rental value of the land might be inferred, it does not take into account the Menses' expenses, the value of their labor, or any value for the risk they undertook raising and harvesting the soybeans. The judgment is reversed on this point so that damages can be determined in accordance with the appropriate measure—fair rental value.

### C. Prescriptive Easement (Points IV–V)

### *i. Order prohibiting interference with the easement*

■■■ The Menses do not challenge whether the Watsons have acquired an easement by prescription. Rather, they only contest the trial court's determination that the easement is 24 feet wide and its omission of the easement's permissible uses. Because they admit the easement exists, the Menses must not interfere with the use of the easement. The trial court found that the Menses tractor parked in front of the gate interfered with the use of the easement. Under *Murphy,* this finding is not disturbed, nor is the order prohibiting the Menses' interference with the easement. Point denied.

### ii. Width of easement

The trial court's determination that the easement is 24 feet wide is supported by substantial evidence. Charles Watson explicitly testified to this fact, and the trial court noted that photographic evidence of the gate confirmed his testimony. Again, under *Murphy*, this determination is not disturbed. Point denied.

### iii. Permissible uses of easement

The trial court's omission of the specific uses from the easement description is not error. When an easement is claimed by prescription, the character and extent of it is fixed and determined by the use under which it is gained. *Holian v. Guenther,* 471 S.W.2d 457, 459 (Mo. 1971). Accordingly, the trial court necessarily defines the acceptable use of an easement by the factual findings that gave rise to the prescription. The Watson family had moved combines, cattle and other farming equipment between their two parcels. This would be the acceptable uses of the easement. If the easement holder thereafter unreasonably exploits the easement beyond those uses, the servient owner may bring suit to enjoin that behavior. Point denied.

## D. Legal Description (Point VII)

Finally, the Menses argue that the trial court's judgment was not reasonably certain in two respects: first, that the prescriptive easement did not specify that only half of the width of the easement burdened the Mense land; second, that the judgment designating the "fence row" as the actual border was indefinite. The Court agrees in both respects.

### i. Easement Description

At trial, all testimony, including that of both Robert Mense and the Watsons, indicated that the easement burdened the property of Donald Ross, a nonparty, and the Menses equally.[3] This information was omitted from the trial court's description of the easement. When a single prescriptive easement will burden multiple owners, the trial court should carefully describe the burden of each. On remand, the trial court shall specify the portion of the easement that burdens the Menses' property.

### ii. Quiet Title Description

Judgments should describe with reasonable certainty the land adjudicated therein, both in ejectment and actions to determine title. *Hart v. T.L. Wright Lumber Co.,* 355 Mo. 397, 196 S.W.2d 272, 278 (1946). Mere reference to a fence in a judgment, without further description of that fence's actual location, is not a description with reasonable certainty. *See Lollar v. Maness,* 765 S.W.2d 695, 700 (Mo.App.1989). Here, the final judgment quieting title states that the new borderline is "the fence line between the [southeast] quarter-quarter and Defendants' property south of it." Therefore, the judgment establishing the border as the "fence line" is affirmed, but on remand the trial court shall take the steps necessary to determine by metes and bounds the location of the fence line in conformity with its previous ruling.

## E. Conclusion

The judgment as to the $90.00 in ejectment damages is reversed, and the case is remanded. On remand, the trial court shall enter more definite descriptions of

---

**3.** Nothing in trial court's order can bind Donald Ross. A trial court's verdict cannot materially affect the real property interest of a non-party *Schaeffer v. Moore,* 262 S.W.2d 854, 858 (Mo.1953). Moreover, neither party raised this in briefing, therefore this issue is not reached.

the new border and the location of the prescriptive easement and determine the fair rental value of the disputed land area. In all other respects, the judgment is affirmed.

All concur.