

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

MELISSA CAVIN,                         )          No. ED111110
                                       )
                 Respondent,           )          Appeal from the Circuit Court
                                       )          of the City of St. Louis
vs.                                    )
                                       )          Honorable Jason M. Sengheiser
BARRIE HAIR,                           )
                                       )
                 Appellant.            )          FILED: October 24, 2023

Barrie Hair appeals from the judgment entered against him and in favor of Melissa Cavin in their dispute over real property. Both claimed superior title to the property: Cavin by a small estate probate affidavit and certificate distributing her father's estate, and Hair by adverse possession. We affirm the judgment quieting title to the property in Cavin's name.

### Factual and Procedural Background

This case arises from competing claims for real property located in the City of St. Louis (the "Property"). In September 2021, Cavin filed a petition against Hair for declaratory judgment and to quiet title to the Property in her name. Cavin claimed title to the Property pursuant to a probate court affidavit that named her as heir to her father's estate. With her petition, Cavin submitted the probate court affidavit and certificate pursuant to section 473.097[1] along with a 1983 general warranty deed and a 2015 quitclaim deed showing her father had sole title to the Property.

---

[1] All statutory references are to RSMo (2016).

Hair, who was living at and claimed a right to occupy the Property, filed counterclaims for adverse possession and to quiet title to the Property. Hair contended his adverse possession began in 2009 and that his claim to the Property was superior to Cavin's.

After a bench trial, the trial court entered judgment in favor of Cavin and against Hair on Cavin's petition for declaratory judgment and claim for quiet title, and on Hair's counterclaim for adverse possession. In its judgment, the trial court found that the conveyance of the Property to Cavin via her father's estate was valid and that Cavin had sole interest in the Property and was therefore entitled to quiet title. The trial court also found in favor of Cavin on Hair's counterclaim for adverse possession, concluding that, "although [Hair] continued to live at the Property after [Cavin's father] moved out, this was done so with [Cavin's father's] permission and was not hostile in any manner." Hair appeals from this judgment. Additional facts are detailed as necessary in our discussion of Hair's arguments on appeal.

## Standard of Review

The standard for appellate review of the judgment in a court-tried case is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Watson v. Mense*, 298 S.W.3d 521, 525 (Mo. banc 2009). We will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* When reviewing the trial court's judgment, we view the evidence and inferences therefrom in the light most favorable to the judgment and we disregard contrary evidence. *See id.* at 526.

## Discussion

Hair raises two points on appeal challenging the trial court's judgment in favor of Cavin. First, Hair argues the trial court erred in entering judgment in favor of Cavin on her claim to quiet title because it was not supported by substantial evidence. Second, Hair claims the trial court erred

2

in entering judgment in favor of Cavin on Hair's adverse possession counterclaim because it was against the weight of the evidence. For the following reasons, we affirm the judgment.

## Point I – Quiet Title

In his first point on appeal, Hair argues the trial court erred in entering judgment in favor of Cavin on her claim to quiet title because it was not supported by substantial evidence in that Cavin's only evidence admitted at trial was an affidavit and certificate from the probate court that did not establish any interest in the Property. We disagree.

A suit to quiet title is a statutory action to determine the respective estates, titles and interests of competing parties claiming an interest in land. *Stander v. Szabados*, 407 S.W.3d 73, 78 (Mo. App. W.D. 2013). Section 527.150 governs quiet title actions and authorizes relief under both legal and equitable principles. *Id.* "In a quiet title action, the trial court must 'ascertain and determine the rights of the parties . . . , grant such relief as may be proper and determine the [superior] title, as between the parties.'" *Id.* at 85 (quoting *Manard v. Williams*, 952 S.W.2d 387, 389 (Mo. App. S.D. 1997)). Each party has the burden of proving superior title to that of the other party. *Id.*

Hair asserts that the evidence adduced at trial did not establish that Cavin's father had any legal interest in the Property and, therefore, there was not substantial evidence to support a finding that legal title vested in Cavin through the probate affidavit and certificate disbursing her father's small estate. The crux of Hair's argument is that, although the affidavit and certificate from the probate court stating that Cavin was entitled to the property described therein was admitted at trial, no evidence was admitted that showed Cavin's father had a conveyable interest in the Property. Hair specifically notes that the trial court did not admit into evidence the other exhibits attached to Cavin's pleadings—a 1983 warranty deed showing Cavin's father and his former wife had title

3

to the Property and a 2015 quit claim deed showing his former wife had deeded Cavin's father her interest in the Property.

Contrary to Hair's argument, the probate court filings provided substantial evidence to support the judgment quieting title to the Property in Cavin's name. The provisions for clearing title by distributees of a small estate are contained in section 473.097. *See* section 473.097.1. Here, Cavin submitted into evidence the probate affidavit and certificate pursuant to this section, which "set[] forth the names and addresses of the persons entitled to the described property of the decedent"—in this case, Cavin—and "authorize[d] the affiant to collect the property of the decedent"—in this case, the Property. The affidavit and certificate was recorded by the City of St. Louis Recorder of Deeds, which is the process by which the distributee of a small estate can establish his or her right to the decedent's real property. *See* section 473.097.4. The trial court also took judicial notice of the probate court's file, which the trial court characterized as establishing that any interest in the Property was vested in Cavin. Although the trial court's judgment referenced in its findings of fact the warranty and quit claim deeds that were not admitted into evidence, the probate court filings alone constituted substantial evidence supporting the trial court's judgment quieting title to the Property in Cavin's name. We note that Hair also asserts in his reply brief that the probate affidavit and certificate was invalid because Cavin "did not name [Hair] in the Affidavit or provide him with notice of the probate proceeding as required by" section 473.097. We do not address this argument because it was raised for the first time in Hair's reply brief. *See Swafford v. Treasurer of Mo.*, 659 S.W.3d 580, 585 n.7 (Mo. banc 2023).

Hair presented no evidence that he had superior title to the Property that could interfere with Cavin's right to the Property as established by the recorded probate affidavit and certificate. Although Hair testified at trial that Cavin's father had told Hair he would transfer the Property to

Hair, the trial court noted there was "no testimony or evidence presented of a written agreement between [Hair] and [Cavin's father]" and also specifically found Hair's "testimony to be less than credible because most of his testimony was based on hearsay." We defer to the trial court's determination of witness credibility. *See Stander*, 407 S.W.3d at 85. Further, as discussed below, Hair failed to establish that he acquired superior title to the Property by adverse possession.

The trial court did not err in quieting title to the Property in Cavin's name and its judgment was supported by substantial evidence. Point I is denied.

### Point II – Adverse Possession

In his second point on appeal, Hair claims the trial court erred in entering judgment in favor of Cavin on Hair's adverse possession counterclaim because it was against the weight of the evidence in that Hair's unrefuted testimony established each element of an adverse possession claim. We disagree.

To prevail on an against-the-weight-of-the-evidence challenge, Hair must follow the necessary analytical framework of marshalling evidence favorable and contrary to an identified proposition. *See Houston v. Crider*, 317 S.W.3d 178, 186-87 (Mo. App. S.D. 2010) (outlining four required analytical steps). An appellate court will only reverse in the rare case that it firmly believes a judgment is wrong. *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014). When the evidence presents two reasonable but different conclusions, an appellate court must defer to the trial court's assessment of the evidence. *Id.*

To acquire title to property by adverse possession, the possession must be: (1) hostile, *i.e.*, under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years occurring prior to the commencement of the action. *Watson*, 298 S.W.3d at 526; *see* section 516.010. The party claiming title by adverse possession has the burden of proving

5

such claim by a preponderance of the evidence. *Id.* The failure to establish any one of the necessary elements defeats an adverse possession claim. *Scott v. Hicks*, 567 S.W.3d 266, 269 (Mo. App. S.D. 2019).

Hair's only evidence in support of his adverse possession claim was his own testimony at trial, which was as follows: Hair had been living at the Property for around 35 years, beginning in approximately 1987. He lived at the Property with Cavin's father until 2009, when Cavin's father moved out. Hair made the mortgage payments throughout the time he lived at the Property, at first through Cavin's father and subsequently to the bank that held the mortgage. Around 1994, he and Cavin's father agreed that Cavin's father would put the Property in Hair's name if he "continue[d] to pay the mortgage." Hair informed Cavin's father that he considered the Property to be his around 1994.

In 2009, after Cavin's father moved out and Hair became the sole occupant of the Property, Hair again notified Cavin's father that he considered the Property to be his. When Hair asked Cavin's father if he had put the Property in Hair's name, Cavin's father informed Hair that he "had to deal with [his ex-wife and co-owner of the Property], and that he would discuss it with [Hair] at a later date." Hair did not testify to any subsequent conversations regarding the Property's ownership. Hair changed the locks and continued to pay the mortgage and all utility bills. After Cavin's father moved out, he would sometimes stay at the Property when visiting St. Louis. Hair testified that Cavin's father would ask Hair permission to visit, which Hair occasionally denied. Hair stated that the nature of his claim to the Property arose from him paying the mortgage and utilities and living at the Property. He asserted that his adverse possession began in 2009.

In its judgment, the trial court found that, "although [Hair] continued to live at the Property after [Cavin's father] moved out, this was done so with [Cavin's father's] permission and was not

6

hostile in any manner." In so concluding, the trial court characterized Hair's relationship to the Property as "more akin to rental property than one of ownership." The trial court also found Hair's "testimony to be less than credible because most of his testimony was based on hearsay."

The trial court's judgment was not against the weight of the evidence. Although Hair argues he established all elements of an adverse possession claim through his unrefuted testimony, his testimony was in fact contested at trial in that Cavin's counsel cross-examined him and challenged his credibility. *See White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). The trial court was free to believe or disbelieve any, all or none of Hair's testimony, and we defer to the trial court's credibility determinations. *See id.* Even when reviewing evidence contrary to the judgment in an against-the-weight-of-the-evidence challenge, our review defers to the trial court's credibility determinations on contested evidence. *See Houston*, 317 S.W.3d at 187; *Ivie*, 439 S.W.3d at 206 (noting appellate courts "defer[] on credibility determinations when reviewing an against-the-weight-of-the-evidence challenge because the circuit court is in a better position to weigh the contested and conflicting evidence in the context of the whole case"). Hair cannot overcome this credibility determination.

Viewed in this light, it was not against the weight of the evidence for the trial court to conclude that Hair failed to meet his burden to prove that his possession was hostile. For possession to be hostile under a claim of right, "the possession must be opposed and antagonistic to the claims of all others, and the claimant must occupy the land with an intent to possess it as his or her own." *Scott*, 567 S.W.3d at 272 (quoting *Flowers v. Roberts*, 979 S.W.2d 465, 469 (Mo. App. E.D. 1998)). To be hostile, a claimant's occupancy "must be in defiance of, not in subordination to, the rights of others." *Id.* A claimant's permissive use of property will not support a claim of adverse possession because the element of hostility is absent. *Id.*

7

The testimony at trial showed that Hair believed he and Cavin's father had an agreement that, after an unspecified amount of time, Cavin's father would deed Hair the Property if Hair continued to pay the mortgage and utilities. Hair inquired of Cavin's father in 2009 about putting title to the Property in Hair's name, and Cavin's father told Hair they would discuss it at a later date. Hair's inquiries to Cavin's father constituted an acknowledgement of the continued fact that someone other than Hair—at the time, Cavin's father and his ex-wife—owned the Property and that Hair was reliant on an act by the record titleholders to acquire the Property, as per their mutual understanding. Given this acknowledgement, the evidence supported the conclusion that Hair's possession of the Property was not "hostile" because he recognized the authority of the record titleholders and that his possession was subordinate to theirs. *See id.* at 273-76. Although Hair lived at the Property for decades and paid the mortgage and utilities, the evidence supported the finding that he did so under an agreement with and in recognition of the Property owner and, therefore, his actions were insufficient to support a claim of adverse possession. *See Bass v. Rounds*, 811 S.W.2d 775, 778-79 (Mo. App. E.D. 1991) (rejecting adverse possession where claimant had occupied property for 17 years, paid utilities and taxes, and changed locks because those acts were not sufficiently unequivocal where claimant continued to acknowledge ownership of other party). As the trial court found, Hair's possession of the Property was akin to that of a lessee, not an adverse possessor. *See id.*; *Allen v. Allen*, 687 S.W.2d 660, 661-62 (Mo. App. S.D. 1985); *see also* Timothy J. Tryniecki, *Hostile Possession and the Defense of Permission*, 18A Mo. Prac., Real Estate Law – Transact. & Disputes section 66:4 (3d ed. 2023) ("A lessee or a life tenant may enter into actual, exclusive, continuous, open and notorious possession for a period of over ten years. Nonetheless, such possession is not hostile and as such does not give rise to a transfer of title by adverse possession.").

8

Upon reviewing the evidence in the light most favorable to the trial court's ruling, we find the judgment in favor of Cavin on Hair's adverse possession claim was not against the weight of the evidence. Point II is denied.

**Conclusion**

For the foregoing reasons, the judgment is affirmed.

_____
MICHAEL E. GARDNER, Judge

Kurt S. Odenwald, P.J., concurs
Renée D. Hardin-Tammons, J., concurs.