

# Missouri Court of Appeals

## Southern District

### In Division

| | | |
|---|---|---|
| ROGER ASH, ET UX., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. SD37819 |
| | ) | FILED: December 12, 2023 |
| KEVIN BEAL, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF WEBSTER COUNTY

Honorable David C. Replogle, Judge

**REVERSED AND REMANDED**

Roger and Sherill Ash (the "Ashes") appeal a judgment quieting title to a 20-foot wide tract of land by awarding ownership of the tract acquired by adverse possession to Kevin Beal ("Mr. Beal") and Barbara Beal (collectively referred to as the "Beals"). The Ashes raise four points on appeal alleging the trial court erred in finding the Beals proved they actually possessed the tract, the possession was exclusive, and their possession was hostile to the Ashes and carried out under a claim of right. Because we agree the record does not contain substantial evidence that the Beals' possession was hostile, we do not reach the remaining points and reverse.

### Factual and Procedural Background

The Ashes and Beals are neighbors in a subdivision that has a 10-foot-wide gravel road

running through it known as Shady Lane, which connects the Ashes' property to the main road. The property in dispute is a 20-foot-wide strip of land (the "tract")[1] that contains Shady Lane. The tract abuts the southern border of the Beals' property. The Beals' warranty deed excluded the tract. During their ownership the Beals mowed the grassy area of the tract, paid taxes on it and used it for parking vehicles. At some point a dispute arose and the Ashes filed suit against the Beals claiming the Beals did "not have access rights" to the tract and those rights are "solely vested" in the Ashes. The Beals filed a counterclaim asserting they had acquired ownership of the tract by adverse possession. The Ashes voluntarily dismissed their action prior to trial.

The case proceeded to bench trial on the Beals' counterclaim for adverse possession of the tract against the Ashes and against Mark and Roxanne Foos ("Foos") for nuisance. Mr. Beal testified on his own behalf. When asked "[a]nd then as far as that portion that went out to the road what'd you do with it," he testified, "I mowed it. I – if I needed fertilize[r] or whatever done to it. I paid taxes on it, every year. I just did upkeep on it." He also testified he parked a 26-foot box truck there. He further testified he previously parked his truck on the front portion of his lot, but the homeowners' association "came to me and asked me to start parking it around back . . . and I talked to all the people in the back, and they said it was fine that I parked around back." He parked his truck there every day for 10 years. He further testified the homeowners' association put gravel on the portion where he parked his truck. The Beals also erected a privacy fence at the southern border between their property and the tract.

Neighbors Bob Aly, Roxanne Foos, and Susan Thomas also testified. Mr. Aly testified

---

[1] The judgment addressed several deficiencies in determining the exact nature of the tract, such as "[t]he survey drawing of the replat . . . depicts a 10-foot utility easement and a 20-foot ingress/egress drive easement . . . although the record was devoid of evidence as to their source and to whom was entitled their benefit." "The record is unclear what interest, if any Mark V Development, Inc. had in the [tract]." At one point in the very contentious trial the court suggested they take a 20-minute break to obtain a certified copy of the recorded plat. This opinion does not seek or purport to define the nature of the tract or easement rights thereon.

he accessed the back of his property using Shady Lane. He lived next to the Ashes and sold his property to the Fooses. He observed the Beals cutting and trimming the grass and stacking wood on the tract. He also observed Mr. Beal park his truck there. Mr. Aly testified he also used the tract "a lot" and said, "I went through there all the time. And never had a problem at all." He observed the Ashes using it and other people, as well. Ms. Foos also testified she drove on Shady Lane to access her property. Finally, Susan Thomas was asked, "everybody has been using the road to go in and go out, according to the testimony today. Is that correct?" She answered, "As needed, yeah."

The Ashes chose not to present evidence.

The trial court found in favor of the Beals on their adverse possession claim against the Ashes. The appeal of the adverse possession claim followed.

## Standard of Review

"When reviewing a bench-tried case, we affirm the trial court's determination unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Pentecost v. Webster*, 674 S.W.3d 195, 204 (Mo.App. 2023) (internal quotation marks omitted); *Watson v. Mense*, 298 S.W.3d 521, 525 (Mo. banc 2009). "We presume the trial court's judgment is valid, and it is the appellant's burden to show otherwise." *Hurricane Deck Holding Co. v. Spanburg Invs., LLC*, 548 S.W.3d 390, 393 (Mo.App. 2018). "We take as true all evidence and reasonable inferences that can be drawn therefrom in the light most favorable to the judgment, disregarding all contrary evidence and inferences." *Dumproff v. Driskell,* 376 S.W.3d 680, 687 (Mo.App. 2012). "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Watson*, 298 S.W.3d at 525. However, "when the evidence is *uncontested*," then "no deference is due to the trial court's findings. . . . [T]he issue is legal and there is no finding of

3

fact to which to defer." ***White v. Dir. of Revenue***, 321 S.W.3d 298, 307 (Mo. banc 2010). "Adverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case are viewed with the view that every property is unique," and "'[e]ach case must be decided in light of its own unique circumstances.'" ***Daniels-Kerr v. Crosby***, 484 S.W.3d 798, 801 (Mo.App. 2016) (quoting ***Kitterman v. Simrall***, 924 S.W.2d 872, 876 (Mo.App.1996)). "A court will overturn a trial court's judgment under these fact-based standards of review only when the court has a firm belief that the judgment is wrong." ***Pearson v. Koster***, 367 S.W.3d 36, 43 (Mo. banc 2012).

## Discussion

The Ashes assert the trial court erred in finding that the Beals had proved their possession of the disputed 20-foot-wide tract was hostile and under a claim of right because that finding was not supported by substantial evidence, as Mr. Beal admitted that he had only begun parking a truck on the first 10 feet of the land beyond his property line after seeking and obtaining the approval of neighbors in that part of the subdivision, establishing that his occupancy of that portion of the disputed tract was permissive and thus not in defiance of the rights of others.

A claimant "'who seeks to establish title to real property by adverse possession must prove that he possessed the land, and that his possession was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years.'" ***Pentecost***, 674 S.W.3d at 207 (quoting ***Empire Dist. Elec. Co. v. Coverdell***, 588 S.W.3d 225, 234 (Mo.App. 2019)). "Failure to prove one of these elements defeats an adverse possession claim." ***Id.*** (citing ***Underwood v. Hash***, 67 S.W.3d 770, 774 (Mo.App. 2002)). "'Possession is hostile if it is antagonistic to the claims of all others. The claimant must occupy the land with the intent to possess it as [their] own. The claimant's occupancy must be in

4

defiance of, rather than in subordination to, the rights of others.'" ***Rohner v. Beets***, 396 S.W.3d 458, 461 (Mo.App. 2013) (quoting ***Cooper v. Carns***, 263 S.W.3d 729, 733 (Mo.App. 2008)). "To be hostile, it is not necessary to have actual malice, hostility, indifference or intent to take the property which belongs to another. The intent to possess, occupy, control, use and exercise dominion over the property is sufficient." ***Trokey v. R.D.P. Dev. Group, L.L.C.***, 401 S.W.3d 516, 525 (Mo.App. 2013) (internal quotation marks omitted). A claimant's permissive use of property will not support a claim of adverse possession because the element of hostility is absent. ***Scott v. Hicks***, 567 S.W.3d 266, 272 (Mo.App. 2019). "An adverse possessor does not recognize the authority of the record titleholder to permit or to prevent his continued use of the property claimed." ***Weaver v. Helm***, 941 S.W.2d 801, 805 (Mo.App. 1997). "Furthermore, the claim of right or ownership must be unequivocal." ***Id***. Regarding whether the Beals' possession was hostile, the trial court held, "the evidence was undisputed that [the Beals] possessed the [a]dversly [p]ossessed [p]roperty hostilely and under a claim of right, actually, openly and notoriously, and continuously for a period in excess of ten years." Upon our review of the record, we find no stipulations or agreements that the Beals' possession was hostile for the required period of time. In addition, because the court recited in its opinion that the hostile element was undisputed, the court did not weigh the credibility of the witnesses or draw inferences from the evidence.

Our analysis must then center on whether the hostile element was undisputed. Mr. Beal testified he had taken possession of the "whole piece of property . . . including the [tract]" when he purchased the property. He clarified "[t]hat the property went out to the middle of the road." He explained he mowed and fertilized the tract and paid taxes on it. He also testified he had permission from the neighbors to use the tract to park his truck on, and that the homeowners'

5

association graveled that area. On cross-examination he confirmed, "And I asked everybody. And everybody that was living back there, at the time, told me it was okay with them."

"'It is well-settled that a party is bound by his own testimony that is not corrected or explained.'" *Hicks*, 567 S.W.3d at 269 (quoting *Ewanchuk v. Mitchell*, 154 S.W.3d 476, 481 (Mo.App. 2005)). "A plaintiff's uncorrected or unexplained testimony admitting material facts has been characterized as a type of uncontested evidence." *Id.* At trial, the Beals bore the burden on their counterclaim to prove hostile possession under a claim of right by a preponderance of the evidence. *See Mense*, 298 S.W.3d at 526. However, Mr. Beal's testimony at trial that he asked for permission to park his truck on the tract was uncorrected and unexplained and therefore may be characterized as uncontested. Since Mr. Beal testified he parked on the tract for at least ten years, and no evidence introduced at trial suggested his permission to park on the tract was revoked, Mr. Beal's testimony indicates he did not occupy the tract with the intent to possess it – an adverse possessor does not subordinate his claim to the property by recognizing possessory rights of others superior to his own. His possession was not hostile under a claim of right.

This conclusion is not altered by the fact that the Beals mowed the tract, paid taxes on the tract, and stacked firewood on the tract. "Possession is hostile if it is antagonistic to the claims of *all* others." *Rohner*, 396 S.W.3d at 461 (emphasis added). But when the claimant already acknowledges that title to the property resides in another and does not claim the property as his own, the claimant's use of the property is not under an unequivocal claim of right. "Possession of land in recognition of a lack of title is insufficient ever to ripen into title by adverse possession." *Hicks*, 567 S.W.3d at 274-76 (citing *Reinheimer v. Rhedans*, 327 S.W.2d 823, 831 (Mo. banc 1959) (claimant failed to establish hostile possession where claimant's uncontested

testimony indicated that, although he had the right to use the property, he recognized titleholder's superior claim to the disputed property).

Without permission to use disputed property, acts such as maintaining property, clearing property of grass and brush, stacking firewood on property, and paying taxes on property may demonstrate the claimant's intent to occupy and possess property under a claim of right. *See DeVore v. Vaughn,* 504 S.W.3d 176, 184 (Mo.App. 2016); *Sommerlath v. Voss*, 449 S.W.3d 390, 395 (Mo.App. 2014); *Snow v. Ingethron*, 285 S.W.3d 415, 420 (Mo.App. 2009); *Cooper*, 263 S.W.3d at 734. However, when the claimant already has permission to use the property, the claimant demonstrates an intent, not to claim property, but to subordinate his or her own claim to the rights of others. *See Ross Farms, Inc. v. Moore*, 873 S.W.2d 308, 309-10 (Mo.App. 1994) (possession was not hostile under a claim of right where permissive use of driveway area was made, even when claimant also mowed and gardened the area). Mr. Beal's acts in mowing the lawn, stacking firewood, and paying taxes are insufficient to support a claim of adverse possession because his permissive use of the tract by parking his truck does not indicate an unequivocal claim of right. The trial court's conclusion that the Beals established hostile possession under a claim of right ignores Mr. Beal's own uncontested testimony and evinces a "firm belief that the judgment is wrong." *Pearson,* 367 S.W.3d at 43.

Therefore, we agree the record contains insufficient evidence of hostile possession and the claim is defeated as a matter of law if any one element fails. Failing on the first element, there is no need to address the remaining elements.

Point one is granted.

## Conclusion

The judgment is reversed and the case is remanded to the Circuit Court for entry of

7

judgment in favor of the Ashes and against the Beals on their claim of adverse possession.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS