

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **JUSTIN BROWNFIELD,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **V.** | ) | **WD87163 consolidated with WD87164** |
| | ) | |
| **DARRIN HEMAN,** | ) | **OPINION FILED: APRIL 8, 2025** |
| **ANGELA HEMAN,** | ) | |
| **AND CREIGHTON STORAGE,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Henry County, Missouri**
The Honorable Michael Brandon Baker, Judge

Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding, Cynthia L. Martin, Judge and Edward R. Ardini, Jr., Judge

Justin Brownfield ("Brownfield") appeals from a judgment that determined Darrin Heman, Angela Heman, and Creighton Storage to be the owners of disputed tracts of land by adverse possession. Brownfield argues that it was against the weight of the evidence for the trial court to find possession of the disputed land to be either hostile or exclusive. Brownfield also contends that the trial court failed to apply the doctrine of estoppel, the parol evidence rule, or the statute of frauds; made a finding about an exhibit that was not supported by substantial evidence; and applied the wrong burden of proof. Finding no error, we affirm.

## Factual and Procedural History

This case involves a dispute over the ownership of two tracts of land located in Henry County, Missouri.  Viewed in the light most favorable to the trial court's judgment,[1] the record on appeal established the following:

On August 16, 1994, Darrin Heman ("Darrin")[2] purchased land in Henry County to use as his residence  ("Home Property").  The Home Property's southern boundary ran along the northern boundary of Missouri State Highway 7.  Darrin lived on the Home Property with his wife, Angela Heman ("Angela").

On June 17, 1995, D.H.,[3] Darrin's brother, purchased a large tract of land, some of which was in Henry County and some of which was in Cass County.  D.H.'s land was situated immediately north and west of Darrin's Home Property.  D.H.'s land was not divided into separate tracts at the time it was purchased.

D.H. sold a portion of his land to Darrin in mid-1995 for $5,000.00.  The sale was not documented by a written contract or by a deed.  The land D.H. sold to Darrin was located in Henry County, and was primarily situated immediately north of the Home

---

[1]"In the appeal of a bench-tried case, we view the evidence and reasonable inferences that may be drawn therefrom in the light most favorable to the judgment, disregarding evidence and inferences to the contrary." *Copper v. Ringen*, 671 S.W.3d 409, 412 n.1 (Mo. App. W.D. 2023) (quoting *Sweeney v. Ashcroft*, 652 S.W.3d 711, 721 (Mo. App. W.D. 2022)).

[2]We refer to Darrin Heman and Angela Heman by their first names to avoid confusion.

[3]All witnesses and others who are not parties are referred to by their initials or by other non-identifying references in accordance with the redaction requirements of section 509.520.

All statutory references are to RSMo 2016 as supplemented when necessary, unless otherwise indicated.

Property, though a sliver of the land was located immediately west of the Home Property. As a result of this transaction, the land D.H. sold to Darrin and the Home Property formed a single contiguous tract that Darrin and Angela thereafter treated as their own. Though D.H.'s land had not been divided into separate tracts at the time of this transaction, D.H. and Darrin had a clear understanding of the portion of D.H.'s land that was being sold to Darrin. Years later, as a result of a survey ordered by D.H., the land D.H. sold to Darrin in 1995 secured a metes and bounds legal description and was identified as Tract II. For ease of reference we hereinafter refer to the land D.H. sold to Darrin in 1995 as Tract II. Darrin and Angela have not argued in this case that the 1995 transaction was sufficient to convey legal title to Tract II from D.H. to Darrin. Instead, they have relied on the 1995 transaction as the time at which they commenced their open, notorious, hostile, and exclusive possession of Tract II, and thus when the clock started running on their claim of adverse possession.

From 1995 through the early 2000's, Darrin and Angela: built a fence on Tract II on a part of the northern property line of Tract II to mark the separation between Tract II and D.H.'s land to the north; built and used dirt bike trails on Tract II; ran businesses and rented storage space to customers on Tract II; and planted trees, mowed, and otherwise cared for Tract II, and for the narrow strip of land situated between the western boundary of Tract II and immediately east of the driveway that allowed access to the area from Missouri State Highway 7. They also installed septic and lateral lines on Tract II to handle the sewage from the Home Property and Tract II. While D.H. and some of his customers sometimes used the dirt bike trails on Tract II, they did so with Darrin's

3

permission. Both Darrin and D.H. considered Tract II to be Darrin and Angela's property as a result of the 1995 transaction.

Darrin and D.H. visited the Henry County Assessor's Office ("Assessor's Office") sometime in 2002 in an effort to clarify ownership of Tract II with the Assessor's Office. The brothers marked on a map, and initialed, that portion of D.H.'s land that had been sold to Darrin in 1995. Though these efforts were undertaken with the Assessor's Office, Darrin's purchase of Tract II from D.H. was never recorded in the Henry County Recorder of Deeds Office.

On March 9, 2012, Darrin and Angela formed Creighton Storage, LLC ("Creighton Storage"). Darrin and Angela executed a quit-claim deed in favor of Creighton Storage on June 6, 2012. Darrin and Angela intended the quit-claim deed to convey both the Home Property and Tract II which they had used as a seamless tract of land since mid-1995. However, the legal description in the quit claim deed mistakenly described only the Home Property.

The business of Creighton Storage has been continuously operated by Darrin and Angela on their Home Property and Tract II since March 9, 2012. In addition to renting out storage space on Tract II, Darrin, and Angela also operated a wood lot on Tract II.

In 2013, D.H. decided to sell the remaining portion of the land he purchased in 1995 to S.M. D.H. intended to sell the land itself, the business he operated on his land, and his home. D.H. did not intend to sell Tract II to S.M. because he had already sold that land to Darrin. When the contract between D.H. and S.M. was signed, a survey had not yet been prepared to divide D.H.'s land into separate tracts. A survey was ordered on

4

June 21, 2013 ("2013 Survey"). It was D.H.'s intent to divide his land into three separate tracts. D.H. intended the 2013 Survey to show the two tracts of land D.H. intended to sell to S.M. (Tract I and Tract III) and to label those tracts as residential and commercial, respectively, to conform with S.M.'s bank loan. The 2013 Survey was also intended to show Tract II, the land D.H. sold to Darrin in 1995. S.M. testified that he was aware that D.H. did not intend to sell him Tract II and that D.H. hoped to use the 2013 Survey to create a legal description for Tract II so a proper deed reflecting D.H.'s earlier sale of Tract II to Darrin could be recorded.

When the 2013 Survey was completed, it diagrammed the locations of Tracts I, II, and III, and noted metes and bounds legal descriptions for each of the Tracts.[4] Tract III

---

[4]The 2013 Survey used the designations of Tracts 1, 2, and 3 instead of Tracts I, II, and III. However, the trial court's judgment from which this appeal is taken uses roman numerals to refer to the Tracts. We do the same in this Opinion in order to be consistent with the trial court's judgment. It is clear, however, that the 2013 Survey's references to Tracts 1, 2, and 3, correspond to, and are interchangeable with, the references to Tracts I, II, and III in the trial court's judgment.

The metes and bounds legal description for Tract II included on the 2013 Survey admitted into evidence at trial as Exhibit 5 is as follows:

Tract II (2):

PART OF A TRACT OF LAND DESCRIBED IN BOOK 1446, AT PAGE 89, IN THE OFFICE OF THE RECORDER OF DEEDS IN CASS COUNTY, MISSOURI, BEING PART OF LOT 2 OF THE SOUTHWEST QUARTER OF SECTION 19, TOWNSHIP 43, RANGE 28, HENRY COUNTY, MISSOURI, DESCRIBED AS FOLLOWS: FROM THE NORTHEAST CORNER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 43, RANGE 29, CASS COUNTY, MISSOURI. RUN THENCE SOUTH 00'27'49" WEST ALONG THE EAST LINE THEREOF, 643.33 FEET TO THE NORTHWEST CORNER OF THE SOUTH HALF OF THE NORTH HALF OF LOT 2 OF THE SOUTHWEST QUARTER OF SAID SECTION 19, TOWNSHIP 43, RANGE 28, HENRY COUNTY, MISSOURI; THENCE SOUTH 89'34'14" EAST ALONG THE NORTH LINE OF SAID SOUTH HALF, 1375.15 FEET

5

was located to the west of Tract II separated by the existing driveway that afforded access to the area from Missouri State Highway 7. Tract I, the largest Tract, was located to the north of both Tract II and Tract III with a portion of Tract I also located to the west of Tract III.

The 2013 Survey also provided a metes and bounds legal description for a narrow "Ingress Egress Easement."[5] The Ingress Egress Easement includes within its boundaries

---

TO THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTH HALF OF LOT 2 OF THE SOUTHWEST QUARTER OF SAID SECTION 19; THENCE SOUTH 00'43'21" WEST ALONG THE EAST LINE OF LOT 2 OF THE SOUTHWEST QUARTER OF SAID SECTION 19, 532.40 FEET TO THE TRUE POINT OF BEGINNING OF THE TRACT TO BE DESCRIBED; THENCE CONTINUING SOUTH 00'43'21" WEST ALONG SAID EAST LINE OF LOT 2, 402.94 FEET; THENCE NORTH 63'40'10" WEST, 750.00 FEET; THENCE SOUTH 10'20'03" WEST, 261.22 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF MISSOURI STATE HIGHWAY NO. 7, AS NOW LOCATED; THENCE NORTH, 326.68 FEET; THENCE NORTH 89'57'18" EAST, 724.13 FEET TO THE TRUE POINT OF BEGINNING. CONTAINS 3.88 ACRES, MORE OR LESS, SUBJECT TO ANY EXISTING EASEMENTS OR RIGHT-OF-WAYS.

[5]The metes and bounds legal description for the Ingress Egress Easement included on the 2013 Survey admitted into evidence at trial as Exhibit 5 is as follows:

Ingress Egress Easement:

PART OF A TRACT OF LAND DESCRIBED IN BOOK 1446, AT PAGE 89, IN THE OFFICE OF THE RECORDER OF DEEDS IN CASS COUNTY, MISSOURI, BEING PART OF LOT 2 OF THE SOUTHWEST QUARTER OF SECTION 19, TOWNSHIP 43, RANGE 28, HENRY COUNTY, MISSOURI, DESCRIBED AS FOLLOWS: FROM THE NORTHEAST CORNER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 43, RANGE 29, CASS COUNTY, MISSOURI, RUN THENCE SOUTH 00'27'49" WEST ALONG THE EAST LINE THEREOF, 1051.49 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF MISSOURI STATE HIGHWAY NO. 7, AS NOW LOCATED: THENCE SOUTH 57'23'36" EAST ALONG SAID RIGHT-OF-WAY LINE, 222.88 FEET; THENCE CONTINUING ALONG SAID RIGHT-OF-WAY LINE, SOUTH 46'10'54" EAST, 148.26 FEET; THENCE SOUTH 55'53'21" EAST ALONG SAID RIGHT-OF-WAY LINE, 380.00

6

an existing driveway that is diagrammed on the 2013 Survey. The existing driveway, and the slightly wider Ingress Egress Easement, begin on the northern boundary of Missouri State Highway 7 and run north-south between Tract II and Tract III ending at the southern boundary of Tract III. The Ingress Egress Easement was intended to ensure the right of access for all three Tracts to and from Missouri State Highway 7. The 2013 Survey was admitted into evidence as Exhibit 5.

When D.H.'s sale of land to S.M. was completed on August 8, 2013, D.H. signed two deeds. One deed included the legal description for Tract III. However, despite D.H.'s expressed intent as confirmed by S.M.'s testimony, the second deed mistakenly included the legal descriptions for Tracts I and II when it should only have included the legal description for Tract I. Following the 2013 transaction between D.H. and S.M., Creighton Storage, Darrin, and Angela continued to possess and use Tract II in the same manner as they had since 1995 without any interference from S.M.

In late 2017, more than four years after S.M. bought land from D.H., Brownfield entered into an agreement with S.M. to rent S.M.'s land with the understanding that Brownfield would eventually purchase the land from S.M. for $230,000.00. It appears that the mistaken inclusion of Tract II in the second deed D.H. signed in 2013 was

FEET TO THE TRUE POINT OF BEGINNING OF THE EASEMENT TO BE DESCRIBED; THENCE NORTH 34'06'39" EAST, 14.66 FEET; THENCE NORTH, 294.58 FEET; THENCE NORTH 32'55'07" EAST, 11.32 FEET; THENCE SOUTH 57'04'53" EAST, 28.41 FEET; THENCE SOUTH, 326.66 FEET TO A POINT ON SAID NORTHERLY RIGHT-OF-WAY LINE OF MISSOURI STATE HIGHWAY NO. 7; THENCE NORTH 55'53'21" WEST ALONG SAID RIGHT-OF-WAY LINE, 46.16 FEET TO THE TRUE POINT OF BEGINNING. SUBJECT TO ANY EXISTING EASEMENTS OR RIGHT-OF-WAYS.

discovered at or about this time. In early 2018, Brownfield asked S.M. to send a letter demanding that Darrin remove steel that was sitting on Tract II. S.M. sent a letter as requested and informed Darrin that he was "withdrawing [his] permission" for Darrin, Angela, and Creighton Storage to use Tract II and ordered them to abandon the property within thirty days. Darrin attempted to resolve the dispute amicably with S.M. but those efforts were not successful. Darrin, Angela, and Creighton Storage continued to use Tract II in the same manner as they had been since 1995.

On January 18 and 19, 2022, S.M. sold his land to Brownfield. Though S.M. was aware of the dispute about ownership of Tract II, the legal description for the land S.M. sold to Brownfield included Tract II. Shortly after Brownfield purchased S.M.'s land, the dispute over ownership of Tract II escalated. Efforts to resolve the dispute, which included Darrin extending an offer to pay Brownfield $12,000 for Tract II, were not successful. At some point, Brownfield tore down the fence Darrin and D.H. had erected in 1995 on a part of the northern boundary of Tract II.

On April 5, 2022, Brownfield filed a petition against Darrin, Angela, and Creighton Storage[6] asserting claims in ejectment, for a declaratory judgment, and to quiet title as to Tract II. Darrin, Angela, and Creighton Storage filed their own petition against Brownfield on April 6, 2022, asserting claims for a declaratory judgment and to quiet title as to Tract II on the basis of adverse possession as well as a claim for trespass relating to Brownfield's destruction of the Tract II boundary fence.

---

[6]DLH Co., LLC was originally named as a defendant in Brownfield's petition but was later dismissed as the entity had no association with Tract II.

8

The parties stipulated that both cases would be tried together though not formally consolidated. The related cases were tried to the court on December 1, 2023. Brownfield filed a motion requesting the trial court's judgment to include findings of fact and conclusions of law.

On March 29, 2024, the trial court entered its judgment addressing the claims raised in both cases ("Judgment"). The Judgment included findings of fact and conclusions of law. The trial court found in favor of Darrin, Angela, and Creighton Storage on their claims for a declaratory judgment and to quiet title. The trial court found that based on Darrin and Angela's possession of Tract II since 1995, Darrin and Angela acquired title to Tract II in mid-2005 by adverse possession and that Creighton Storage acquired title to Tract II by adverse possession at the time it began operating on Tract II by virtue of the tacking of its interest to the interests of Darrin and Angela. For the same reasons, the trial court also concluded that Darrin, Angela, and Creighton Storage acquired title by adverse possession to "the land lying East of the driveway and South of the Northwest corner of Tract II" which was the very narrow strip of land lying immediately east of the existing driveway and immediately west of the western boundary of Tract II.[7] The trial court found in favor of Darrin, Angela, and Creighton Storage on

---

[7]This strip of land lies within, and on the eastern side of, the Ingress Egress Easement depicted and legally described on the 2013 Survey. The effect of the Judgment is to remove the "land lying East of the driveway and South of the Northwest corner of Tract II" from the Ingress Egress Easement, as title to that land was held by the trial court to have been acquired by Darrin, Angela, and Creighton Storage by adverse possession before the 2013 Survey was completed and, thus, before the Ingress Egress Easement was created.

9

their trespass claim asserted against Brownfield and awarded them a monetary judgment in the amount of $500.00. Finally, the trial court rejected all of the claims asserted in Brownfield's petition.

Brownfield appeals.

## Finality of the Judgment

Before addressing the merits of this appeal, this Court must determine that it has jurisdiction to do so. That is because "[t]he right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists." *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n. Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017) (quoting *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011)). Because the finality of a judgment is a prerequisite to our jurisdiction, if we have any doubt about a judgment's finality, we must address the issue of finality, *sua sponte*, even though the issue has not been raised by the parties. *See, e.g., Jefferson City Med. Grp., P.C. v. Brummett*, 665 S.W.3d 380, 384 (Mo. App. W.D. 2023).

"Although many statutes govern 'the right to appeal, the only statute even potentially applicable to the present case is section 512.020(5),' which provides that 'final judgments' are appealable." *Wilson v. City of St. Louis*, 600 S.W.3d 763, 767 (Mo. banc 2020) (quoting *First Nat'l Bank of Dieterich*, 515 S.W.3d at 221). "If a judgment resolves all claims by and against all parties . . . it is commonly referred to as a 'final judgment.'" *Id.* at 768 (quoting *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019)).

10

In this case, the Judgment facially resolved all asserted claims as to all named parties. The Judgment denied all claims asserted by Brownfield in the petition he filed. The Judgment found in favor of Darrin, Angela, and Creighton Storage on all of the claims they asserted against Brownfield in their petition. At first blush, the Judgment appears, therefore, to be final. However, "[a] final judgment [must] resolve[] all issues in a case, leaving nothing for future determination." *Id.* at 768. (quoting *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012)). When a judgment determines title to real estate, the judgment must "describe with reasonable certainty the land adjudicated therein." *Tillman v. Hutcherson*, 154 S.W.2d 104, 110 (Mo. 1941). "[U]nless the land in dispute can be located from the written description in the judgment, the law suit has been in vain and settles nothing except that respondent is entitled to the land wherever it is." *Id.* Thus, if a "judgment fails to adequately describe the affected property . . . the judgment fail[s] to resolve all the issues before the trial court" and "is not final," depriving an appellate court of jurisdiction to hear an appeal from the judgment. *Maune v. Beste*, 292 S.W.3d 528, 530 (Mo. App. E.D. 2009).

"[T]he ease with which [this] broad general principle[] may be formulated and stated belies the difficulty frequently inherent in determination of whether a particular description [in a judgment] is sufficient." *Allen v. Smith*, 375 S.W.2d 874, 882 (Mo. App. 1964). However, it is nonetheless incumbent on this court to determine whether the Judgment adequately describes the affected real property as to support a conclusion that the Judgment is final.

11

The Judgment concludes that Darrin, Angela, and Creighton Storage acquired title by adverse possession to two tracts of property: "Tract II" and "the land lying East of the driveway and South of the Northwest corner of Tract II." The Judgment "defines" Tract II by reference to Exhibit 5 but does not attach Exhibit 5 to the Judgment or incorporate the exhibit by reference. Beyond the cross-reference to Tract II, the Judgment does not further describe "the land lying East of the driveway and South of the Northwest corner of Tract II."

Exhibit 5 is the 2013 Survey and is a part of the record on appeal. The 2013 Survey includes a diagram of the boundaries of Tracts I, II, and III as well as a metes and bounds legal description for each Tract. The 2013 Survey also includes a diagram of the Ingress Egress Easement and a metes and bounds legal description for the easement. The 2013 Survey diagrams the existing driveway, which is located within the boundaries of the Ingress Egress Easement, permitting one who examines the 2013 Survey to visualize "the land lying East of the driveway and South of the Northwest corner of Tract II." Examination of the 2013 Survey also permits one to see that "the land lying East of the driveway and South of the Northwest corner of Tract II" is a very narrow strip of land along the eastern boundary of the Ingress Egress Easement.

The Judgment's express reference to Exhibit 5, and the inclusion of Exhibit 5 in our record on appeal, adequately describes the real property affected by the Judgment. Exhibit 5 leaves no doubt that the parties know and understand the boundaries of the tracts as to which title has been determined. We thus conclude that the Judgment satisfies the requirements of finality because it resolves all claims as to all parties and leaves no

12

room for debate amongst the parties about the location and description of the real property awarded to Darrin, Angela, and Creighton Storage by adverse possession. *But cf. Maune*, 292 S.W.3d at 529-530 (dismissing an appeal for want of a final judgment where the judgment granted an easement by prescription but failed to include a legal description of the property over which the easement was granted, failed to provide any description of the location of the prescriptive easement, and failed to refer to or mention documents and evidence in the record from which the omitted descriptions could have been determined); *Taylor v. Cain & Vaughn Associates, Inc.*, 145 S.W.3d 899, 900-902 (Mo. App. S.D. 2004) (dismissing an appeal for want of a final judgment where judgment quieted title by adverse possession to property described in the judgment as "Exhibit 6" and granted a prescriptive easement over the same land because although Exhibit 6 was a part of the record, it was a mere plat survey with drawings that included "no courses, distances, point[s] of origin, point[s] or termination, or designation of width," and because numerous other surveys and plat explanations in the record revealed inconsistent descriptions of the land at issue); *Williams v. Jenkins*, 128 S.W.3d 183, 185-186 (Mo. App. S.D. 2004) (dismissing an appeal for want of a final judgment where the judgment granted a prescriptive easement but included "no legal description in the findings of the decretal part of the judgment" and where there was no "exhibit or other evidence in the record which provides an adequate legal description" and the driveway impacted by the prescriptive easement could not be readily located on the surveys in evidence).

Our inquiry into whether the Judgment describes with reasonable certainty the real property whose title it affects as to qualify as a final judgment is a narrower inquiry than

13

that required to determine whether a judgment is in a form suitable for recording. A judgment or decree "should be in a form so that it alone will be suitable for recording in real estate records." *Pinewoods Associates v. W.R. Gibson Dev. Co.*, 783 S.W.2d 478, 481 (Mo. App. W.D. 1990). This aspirational objective is likely a function of the fact that several statutes contemplate or require the recordation of judgments affecting title to real property. *See, e.g.*, section 511.320[8] (addressing judgments adjudging a conveyance of real estate or quieting or determining title to real estate, and providing that a copy of such judgments "shall . . . be recorded in the office of the recorder of the county wherein the lands . . . lie, within eight months after such judgment or decree is entered," and that if the judgment is not so recorded, "it shall not be valid, except between the parties thereto and such as have actual notice thereof"); section 527.230 (providing that decrees entered pursuant to section 527.190 to 527.250 "shall be recorded in the office of the recorder or register of deeds of the said county where the lands are situate"); section 452.330.6 (addressing the disposition of property and debts in a dissolution decree, and providing that a "certified copy of any decree of court affecting title to real estate may be filed for record in the office of the recorder of deeds of the county and state in which the real estate is situated by the clerk of the court in which the decree was made").

It is beyond the scope of this opinion to address every requirement that may be properly imposed by a county recorder for a document to be in recordable form. *See, e.g.*, section 59.330; section 59.310. At a minimum, however, to be recordable, a

---

[8]All statutory references are to RSMo 2016 as supplemented through the date of this opinion unless otherwise noted.

document affecting title to real estate must contain a legal description of the property. Section 59.330.2. The Judgment in this case does not include legal descriptions for either Tract II or for "the land lying East of the driveway and South of the Northwest corner of Tract II." It is axiomatic that where a judgment that affects title to real estate satisfies the aspirational objective of being "alone suitable for recording" the judgment will undoubtedly describe the affected real estate with reasonable certainty as to ensure its finality. However, a judgment's failure to satisfy the aspirational objective of being "alone suitable for recording" cannot be said to render the judgment not final for purposes of appeal as a matter of law, as the judgment could, (as in this case), nonetheless adequately describe the affected property in a manner that resolves all claims as to all parties leaving no uncertainty about the determined rights and liabilities of the parties.

That said, a judgment's failure to include a legal description for affected real estate may, in some instances, support a finding of trial court error requiring reversal and remand even if the judgment is otherwise final. *See, e.g., In re Marriage of Tanner*, 245 S.W.3d 922, 923 (Mo. App. E.D. 2008) (holding that although husband did not request amendment of dissolution judgment as required by Rule 78.07(c) to include legal descriptions of real estate awarded by the decree, the trial court's error in not including legal descriptions warranted plain error relief); *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 879 (Mo. App. W.D. 2001) (finding merit in appellant's claim of trial court error where dissolution decree failed to include legal descriptions for real estate awarded by the decree because even though section 452.330.6 does not "expressly mandate" including the legal description of property awarded in a dissolution decree decisional law has

15

recognized that it is error for a dissolution decree to fail to do so) (citations omitted). It is logical to conclude that cases like *In re Marriage of Tanner* and *Ricklefs* ascribe error to a trial court's failure to include legal descriptions in a judgment affecting title to real property where a statute related to the subject matter of the litigation directs or authorizes the judgment to be recorded, and thus (implicitly) to be in recordable form.

Section 511.520 would appear to require recordation of the Judgment as a condition of imparting constructive notice of the ownership of the affected real property therein described. However, the Judgment in this case does not include legal descriptions suggesting the possibility that it may not be accepted for recording by the Henry County Recorder or the possibility that even if it is accepted for recording it may not be sufficiently capable of indexing as to impart constructive notice to third parties who do not have the benefit of Exhibit 5 (the 2013 Survey).

However, no party has raised a claim of trial court error based on the Judgment's failure to include legal descriptions for the two tracts as to which title was determined. Rule 84.13(c)[9] provides that "[p]lain errors affecting substantial rights may be considered on appeal, ***in the discretion of the court***, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." (Emphasis added.) "[P]lain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Rouse v. Cuvelier*, 363 S.W.3d 406, 417-18 (Mo. App. W.D. 2012) (quotation omitted). "We will reverse for

_____

[9]All rule references are to *Missouri Court Rules, Volume 1 -- State, 2024* unless otherwise indicated.

16

plain error in civil cases only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *Id.* at 418 (quotation omitted). The trial court's failure to include legal descriptions for the two tracts of real property awarded to Darrin, Angela, and Creighton Storage by the Judgment could easily have been remedied by raising the issue with the trial court. Moreover, the exclusion of legal descriptions in the Judgment is not so egregious as to weaken the very foundation of the process and seriously undermine our confidence in the outcome of this case. Under the circumstances, it is neither proper nor warranted for this court to exercise its discretion under Rule 84.13(c) to conduct plain error review to address the Judgment's failure to include legal descriptions particularly as that alleged error has not even been raised by any party to this appeal.[10]

Because we have jurisdiction to entertain this appeal as the Judgment is final, we turn our attention to the merits of Brownfield's points relied on.

## Standard of Review

"The standard of review for a bench-tried civil case is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Copper v. Ringen*, 671 S.W.3d 409, 415 (Mo. App. W.D. 2023) (quoting *Wright v. Nash*, 652 S.W.3d 246, 252 (Mo. App. W.D.

---

[10]Because of our desire to be as complete as the record permits in describing the real property affected by the Judgment, the legal descriptions for Tract II and for the Ingress Egress Easement (within which "the land lying East of the driveway and South of the Northwest corner of Tract II" is located) are set forth in this Opinion, *supra*. We do not address whether this Opinion can be recorded pursuant to section 511.520, or otherwise, in order to avoid future confusion in the chain of title.

17

2022). "We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Id.* (quoting *Wright*, 652 S.W.3d at 252). "We will 'accept as true the evidence and inferences from the evidence that are favorable to the trial court's [judgment] and disregard all contrary evidence." *Lukefahr v. Taylor*, 673 S.W.3d 892, 896 (Mo. App. E.D. 2023) (quoting *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009)). "We defer to the trial court's determinations of credibility and view the evidence and inferences drawn therefrom in the light most favorable to the judgment." *Id.* (citation omitted).

## Analysis

Brownfield raises six points on appeal. In his first two points, Brownfield argues that the trial court erred in finding that Darrin, Angela, and Creighton Storage acquired title to Tract II by adverse possession because it was against the weight of the evidence for the court to find that their possession of Tract II was hostile (Point One) and exclusive (Point Two). In Point Three, Brownfield contends that the trial court erroneously applied the law by "fail[ing] to apply estoppel" which he asserts would have resulted in the entry of a judgment in his favor. In Point Four, Brownfield argues that the trial court committed legal error by failing to apply the parol evidence rule and the statute of frauds. In Point Five, Brownfield asserts that the trial court erred in finding that an exhibit admitted at trial failed to include Tract III when that finding was not supported by substantial evidence. Finally, in Point Six, Brownfield argues that the trial court

18

committed legal error by applying an incorrect burden of proof to find that Darrin, Angela, and Creighton Storage acquired title to Tract II by adverse possession.

Although the Judgment awarded title to two separate tracts of land to Darrin, Angela, and Creighton Storage, Brownfield's points on appeal and the arguments in his Brief only address the award of title by adverse possession to Tract II. Brownfield's points on appeal and the arguments in his Brief do not address the award of title to Darrin, Angela, and Creighton Storage to the "land lying East of the driveway and South of the Northwest corner of Tract II." As a result, any allegations of error related to the Judgment's award of title to Darrin, Angela, and Creighton Storage of the "land lying East of the driveway" have been abandoned for purposes of appeal. *See Campbell v. Baxter Int'l, Inc.*, 697 S.W.3d 36, 40 n.3 (Mo. App. E.D. 2024) (finding that any claim of error in a trial court's judgment is abandoned for purposes of appeal if the argument is not made on appeal).

We begin our discussion of the merits of Brownfield's points on appeal by collectively addressing Points One and Two.

***The trial court's findings that Darrin, Angela, and Creighton Storage acquired title to Tract II by adverse possession were not against the weight of the evidence with respect to the essential elements of hostility and exclusivity. (Points One and Two)***

In Brownfield's first and second points on appeal, he argues that the trial court erred in concluding that Darrin, Angela, and Creighton Storage acquired title to Tract II by adverse possession because the findings with respect to two of the essential elements of an adverse possession claim, hostile possession (Point One), and exclusive possession (Point Two), were against the weight of the evidence.

19

"To acquire title by adverse possession . . . [the] possession must be: (1) hostile, that is, under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the necessary period of [ten] years prior to the commencement of the action." *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009) (citation omitted). "The party claiming ownership by adverse possession has the burden of proving his claim by a preponderance of the evidence." *Id.* (citation omitted). The ten-year period "must be consecutive, though it need not immediately precede a quiet title suit." *Pentecost v. Webster*, 674 S.W.3d 195, 207-08 (Mo. App. S.D. 2023) (citation omitted). "A claimant may tack [its] period of adverse possession with that of [its] predecessors in order to meet the ten year requirement." *Watson*, 298 S.W.3d at 526. Here, Brownfield challenges only that Darrin, Angela, and Creighton Storage's possession of Tract II was not adverse because the weight of the evidence does not support finding that possession was either hostile or exclusive. Brownfield does not challenge the trial court's findings with respect to the remaining essential elements of an adverse possession claim or that Creighton Storage's acquisition of title to Tract II by adverse possession was a result of the tacking of its interest to the interests of Darrin and Angela.

"An 'against-the-weight-of-the-evidence' challenge 'presupposes that there is sufficient evidence to support the judgment.'" *Sansone v. Fulton*, 679 S.W.3d 9, 14 (Mo. App. W.D. 2023) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014)). This standard of review "takes into consideration which party has the burden of proof and that the circuit court is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility

20

determinations through its own perspective." *Id.* (citation omitted). To prevail on an against-the-weight-of-the-evidence challenge, Brownfield must follow the "necessary analytical framework of marshalling evidence favorable and contrary to an identified proposition." *Cavin v. Hair*, 677 S.W.3d 613, 618 (Mo. App. E.D. 2023) (citing *Houston v. Crider*, 317 S.W.3d 178, 186-87 (Mo. App. S.D. 2010)). This requires the completion of four sequential steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment; (2) identify all of the favorable evidence in the record supporting the existence of that proposition; (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and, (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Lukefahr*, 673 S.W.3d at 896. (quoting *Houston*, 317 S.W.3d at 187). "An appellate court will only reverse in the rare case that it firmly believes a judgment is wrong." *Cavin*, 677 S.W.3d at 618. "A judgment is against the weight of the evidence only if the trial court could not have reasonably found, from the evidence at trial, the existence of a fact that is necessary to sustain the judgment." *Copper v. Ringen*, 671 S.W.3d 409, 416 (Mo. App. W.D. 2023) (quoting *Wright v. Nash*, 652 S.W.3d 246, 254 (Mo. App. W.D. 2022)). "When reviewing the record under this standard, the appellate court defers to the trial court's findings of fact when the factual issues are contested and when the facts as found by the trial court depend on credibility determinations." *Wright*, 652 S.W.3d at 254 (quoting *Price v. Thompson*, 616 S.W.3d 301, 313 (Mo. App. W.D. 2020)).

21

**A. The trial court's finding that Darrin, Angela, and Creighton's possession of Tract II was hostile was supported by the weight of the evidence. (Point One)**

In Point One, consistent with the first sequential step of an against-the-weight-of-the-evidence challenge, Brownfield identifies and challenges the essential factual proposition that Darrin, Angela, and Creighton Storage's possession of Tract II was hostile.

"'Hostile,' for purposes of adverse possession, 'means a possession antagonistic to the claims of all others, with an intent to occupy as one's own.'" *Pentecost*, 674 S.W.3d at 208 (citation omitted). "There need not be a dispute between the two parties in order for the hostile element of adverse possession to be satisfied. This element may even be met where there is a mistaken belief of ownership." *Steiner v. Stribrny*, 677 S.W.3d 833, 843 (Mo. App. W.D. 2023) (quoting *Ferguson v. Hoffman*, 462 S.W.3d 776, 781 (Mo. App. W.D. 2015)). In fact:

> [t]he claimant need not intend to take away something that belongs to another or be indifferent as to the facts of the legal title. It is the intent to possess rather than the intent to take from the true owner that governs. Even if the claimant mistakenly believes she had title and occupied the land as her own, the hostile element is satisfied.

*Id.* at 842 (quoting *Cooper v. Carns*, 263 S.W.3d 729, 733 (Mo. App. W.D. 2008)).

Consistent with the second sequential step of an against-the-weight-of-the-evidence challenge, Brownfield identifies *some* of the favorable evidence in the record supporting the proposition that Darrin, Angela, and Creighton Storage's possession of Tract II was hostile. Brownfield acknowledges that: Darrin and Angela built a septic system and lateral lines underground on Tract II in 1996; Darrin and Angela and his

22

family mowed Tract II; buildings were erected on the Home Property that encroached onto Tract II; one of Darrin, Angela, or Creighton Storage's tenants lived in a trailer that encroached on Tract II; Darrin and Angela improved Tract II by splitting payment on dirt added to the Tract and by installing a gravel pad; Darrin, Angela, and Creighton Storage operated a storage facility and wood pile on Tract II; and Darrin testified that he, Angela, and Creighton Storage openly possessed and used Tract II since 1995. Brownfield failed, however, to identify *all* of the evidence in the record favorable to the trial court's finding that Darrin, Angela, and Creighton Storage's possession of Tract II was hostile, including the important evidence that D.H. sold Tract II to Darrin in 1995; that Darrin and D.H. went to the Assessor's Office in 2002 in an effort to ensure that records regarding ownership of the land D.H. sold to Darrin were accurate; that D.H. never intended to sell Tract II to S.M. in 2013; and that S.M. testified that he understood that it was D.H.'s intent to prepare the 2013 Survey so that the sale of Tract II to Darrin could be properly documented. Brownfield also neglects to mention that the Judgment included express findings that the evidence about the 1995 sale of land from D.H. to Darrin was credible and that although the 1995 sale was not documented by a deed, D.H. and Darrin considered Tract II to belong to Darrin and Angela at all points from and after mid-June, 1995. Brownfield's failure to identify all of the favorable evidence in the record concerning the factual proposition that he challenges reflects a failure to complete the required weight-of-the-evidence analysis and jeopardizes Brownfield's claim. *See Lukefahr*, 673 S.W.3d at 896.

23

Brownfield's Brief then skips entirely the third sequential step of an against-the-weight-of-the-evidence challenge and next addresses the fourth sequential step. In discussing the fourth sequential step, Brownfield summarily lists "facts" untethered to the record and then lists several case references with no analysis connecting the cited authorities or their holdings to each "fact." This unpersuasive exercise is then followed by a section of the argument that purports to recite "facts" that Brownfield suggests are inconsistent with a finding of hostile possession, in an apparent attempt to merge discussion of the third sequential step of an against-the-weight-of-the-evidence challenge with discussion of the fourth step. However, though Brownfield identifies facts he contends are inconsistent with a finding of hostile possession, he fails to resolve all conflicts in the evidence in accordance with the trial court's credibility determinations, whether explicit or implicit, as required by the third sequential step.

For example, the trial court expressly found that it did not believe the evidence that was offered to prove that S.M. gave Darrin, Angela, and Creighton Storage permission to use Tract II after S.M.'s purchase of land from D.H. in 2013. The trial court also expressly found that Darrin, Angela, and Creighton Storage did not need permission from S.M. to possess and use Tract II because by the time S.M. acquired land from D.H. in 2013, Tract II had already been acquired by Darrin, Angela, and Creighton Storage by adverse possession. Yet, Brownfield highlights numerous "facts" he claims are inconsistent with a finding of hostile possession that post-date 2005 when Darrin and Angela were deemed by the trial court to have acquired title to Tract II by adverse possession. Brownfield's reliance on facts that post-date the date when the trial court

24

deemed title to have been acquired by adverse possession are plainly irrelevant *except* to the extent they are being relied on by Brownfield to challenge the trial court's credibility determinations with respect to the legitimacy of the 1995 transaction between Darrin and D.H. But, Brownfield's effort ignores that in making an against-the-weight-of-the-evidence challenge contrary evidence must be resolved in accordance with the trial court's explicit and implicit credibility determinations consistent with our obligation on appellate review to defer to a trial court's credibility determinations. *Cavin*, 677 S.W.3d at 619 ("[e]ven when reviewing evidence contrary to the judgment in an against-the-weight-of-the-evidence challenge, our review defers to the trial court's credibility determinations on contested evidence") (citation omitted). We therefore disregard all contrary evidence identified by Brownfield that post-dates mid-June 2005 when the trial court found title to Tract II to have been acquired by Darrin and Angela by adverse possession.[11]

Brownfield does identify some evidence that he claims is contrary to the finding of hostile possession which predates mid-2005. Brownfield cites to evidence that Darrin and Angela did not pay any taxes on Tract II after the sale of the land by D.H. But, Brownfield fails to explain, as required by the fourth sequential step of an against-the-weight-of-the-evidence challenge, why the favorable evidence, along with the reasonable

_____

[11]Though Creighton Storage was not formed until sometime in 2012, the trial court found that it adversely possessed Tract II by virtue of the tacking of its interest to the interests of Angela and Darrin and, thus, acquired title immediately upon its formation. That conclusion, which is not challenged by Brownfield, reinforces that facts relating to events from and after 2005 are irrelevant to Brownfield's against-the-weight-of-the-evidence challenge to the finding of hostile possession.

25

inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition that Darrin and Angela were in hostile possession of Tract II for the requisite ten-year time period.

The trial court's finding that Darrin, Angela, and Creighton Storage's possession of Tract II was hostile was not against the weight of the evidence.

Point One is denied.

**B. The trial court's finding that Darrin, Angela, and Creighton Storage's possession of Tract II was exclusive was supported by the weight of the evidence. (Point Two)**

In Point Two, consistent with the first sequential step of an against-the-weight-of-the-evidence challenge, Brownfield identifies and challenges the essential factual proposition that Darrin, Angela, and Creighton Storage's possession of Tract II was exclusive.

"'Exclusive possession' means 'the claimant must hold the land for himself or herself only, and not for another.'" *Pentecost*, 674 S.W.3d at 208 (quoting *Lancaster v. Neff*, 75 S.W.3d 767, 774 (Mo. App. W.D. 2002)). "Joint possession with the owner is not sufficient to support title by adverse possession." *Id.* (citation omitted). As a result, a party claiming adverse possession must present evidence that they "wholly excluded the true owner from possession of the property" so that they did not jointly possess the property. *Coleman v. Hartman*, 626 S.W.3d 289, 299 (Mo. App. W.D. 2021) (quoting *A2 Creative Grp., LLC v. Anderson*, 596 S.W.3d 214, 219 (Mo. App. W.D. 2020)). However, "'[s]poradic use, temporary presence, or permissive visits by others, including

26

the record owner,' will not defeat a claim of exclusive possession." *Id.* (quoting *A2 Creative Group, LLC*, 596 S.W.3d at 219).

Consistent with the second sequential step of an against-the-weight-of-the-evidence challenge, Brownfield acknowledges *some* of the favorable evidence in the record that supports the trial court's finding that Darrin, Angela, and Creighton Storage's possession of Tract II was exclusive. Brownfield acknowledges that Darrin and D.H. constructed a white fence along a part of the northern boundary of Tract II that was intended to mark the dividing line between Tract II and D.H.'s land to the north; that Darrin and Angela installed lateral lines on Tract II; that Darrin and Angela contributed to dirt work performed on Tract II and installed a gravel pad; that Darrin, Angela, Creighton Storage, or their tenants always mowed and maintained Tract II; and that Darrin, Angela, and Creighton Storage operated a storage business on Tract II.

Brownfield fails once again, however, to acknowledge *all* of the favorable evidence relied upon by the trial court to find that Darrin, Angela, and Creighton Storage's possession of Tract II was exclusive. *See Lukefahr*, 673 S.W.3d at 896 (finding that an against-the-weight-of-the-evidence challenge requires an appellant to "identify *all* of the favorable evidence in the record supporting" the challenged factual proposition) (emphasis added). Brownfield fails to acknowledge that the trial court found credible the evidence that Darrin paid D.H. for ownership rights over Tract II in 1995; that D.H. believed Darrin and Angela were the owners of Tract II from and after the 1995 transaction and that D.H. had no right to sell Tract II to S.M. in 2013; that the 2013 Survey was prepared, in part, to generate a legal description for Tract II so a deed could

27

be signed to officially document the 1995 sale of Tract II to Darrin; and that D.H. and Darrin went to the Assessor's Office in 2002 in an effort to correct the Assessor's records to reflect that Darrin and Angela owned Tract II.  The omitted favorable evidence is particularly compelling as it demonstrates that D.H., the *record* title holder of Tract II during the requisite ten-year period after the 1995 sale, believed that Darrin and Angela were the true and sole owners of Tract II at all times consistent with the essential element of exclusivity of possession.

Once again, Brownfield skips a discrete discussion of the third sequential step in an against-the-weight-of-the-evidence challenge and jumps to a discussion of the fourth step.  And in that context, Brownfield once again highlights much of the same contrary evidence he identified in Point One nearly all of which post-dates the date in mid-2005 when Darrin and Angela were determined by the trial court to have acquired title to Tract II by adverse possession.  For the reasons explained in our discussion of Point One, we disregard evidence identified by Brownfield that post-dates the ten-year period for adverse possession.

Brownfield does note that before mid-2005, Darrin and Angela allowed D.H.'s customers and employees to use dirt trails on Tract II without telling them to leave.  However, Brownfield ignores the evidence that Darrin extended permission for this use.  Brownfield fails to resolve this conflict in the evidence in favor of the trial court's express or implied credibility determinations as required by the third sequential step in an against-the-weight-of-the-evidence challenge and also fails to explain, as required by the fourth sequential step, why the favorable evidence, along with the reasonable inferences

28

drawn from that evidence, is so lacking in probative value when considered in the context of the totality of the evidence that it fails to induce belief in the proposition that Darrin and Angela were in exclusive possession of Tract II for the requisite ten-year time period. Even without these shortcomings, we are unpersuaded by Brownfield's reliance on evidence that D.H.'s customers and employees sometimes used the dirt bike trails on Tract II as sporadic permissive use does not defeat exclusive possession. *See Coleman*, 626 S.W.3d at 299 (internal citation omitted) (finding that sporadic use or permissive visits by others, including the record owner, does not defeat a claim of exclusive possession).

The trial court's finding that Darrin, Angela, and Creighton Storage's possession of Tract II was exclusive was not against the weight of the evidence.

Point Two is denied.

***Brownfield's claim that the trial court committed error by failing to apply the doctrine of estoppel was waived and in any event rests on contested evidence that we resolve in favor of the Judgment. (Point Three)***

In Point Three, Brownfield argues that the trial court erred in finding that Darrin, Angela, and Creighton Storage acquired title to Tract II by adverse possession because the trial court should have applied the doctrine of estoppel. The essence of Brownfield's claim is that Darrin, Angela, and Creighton Storage's claims of adverse possession should have been estopped because they watched Tract II be sold twice (in 2013 and then in 2022) and represented to both S.M. and Brownfield that their claim to Tract II was subordinate.

29

"The equitable defense[] of estoppel . . . arises from the unfairness of allowing a party to belatedly assert known rights on which the other party has, in good faith, relied thereby and become disadvantaged." *Kansas City Area Transp. Auth. v. Donovan*, 601 S.W.3d 262, 276 (Mo. App. W.D. 2020) (quoting *Shores v. Express Lending Servs., Inc.*, 998 S.W.2d 122, 127 (Mo. App. E.D. 1999)).  In essence, equitable estoppel is an assertion "that even if the allegations in the plaintiff's petition are established, the plaintiff cannot prevail because additional facts exist which avoid the legal responsibility of the defendant." *Ditto, Inc. v. Davids*, 457 S.W.3d 1, 14 (Mo. App. W.D. 2014) (quoting *Belt v. Wright Cnty.*, 347 S.W.3d 665, 669 (Mo. App. S.D. 2011)).  The necessary elements of an estoppel claim, require "(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement or act." *Cent. Parking Sys. of Mo., LLC v. Tucker Parking Holdings, LLC*, 519 S.W.3d 485, 495 (Mo. App. E.D. 2017) (quoting *Brown v. State Farm Mut. Auto Ins. Co.*, 776 S.W.2d 384, 386 (Mo. banc 1989)).  Because relief by estoppel is not favored by the courts, the doctrine "will not be applied lightly" nor will it "arise unless justice to the rights of others demands it." *Id.* at 496 (internal citations omitted).

Brownfield argues that the trial court's Judgment "failed to address estoppel." This argument has been waived.  Though Brownfield asserted the defense of estoppel in his pleadings and requested that the trial court make findings of fact and conclusions of law in its Judgment, Brownfield did not file a Rule 78.07(c) motion after the Judgment

30

was entered to alert the trial court to his concern that the Judgment omitted purportedly required findings on the subject of the defense. Rule 78.07(c) states that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." "The party appealing must object at the trial level to the failure to make a finding so the circuit court has an opportunity to correct the error." *Prosecuting Att'y, 21st Jud. Cir., ex rel. Williams v. State*, 696 S.W.3d 853, 863 (Mo. banc 2024) (quoting *T.T.G. v. K.S.G.*, 530 S.W.3d 489, 495 n.4 (Mo. banc 2017)). In the absence of a Rule 78.07(c) motion, Brownfield's claim that the trial court failed to make specific findings is waived. *See id.* at 864 (internal citation omitted) (finding that "it would not be appropriate to criticize the circuit court for failing to make any required finding").

In any event, Brownfield has no right to assert a claim of error based on the Judgment's failure to making findings regarding the asserted defense of estoppel. Rule 73.01(c) addresses findings of fact and conclusions of law in a judgment and states that "[t]he court . . . if requested by a party shall[] include in the [judgment] findings on the controverted material fact issues specified by the party." Brownfield's request for findings of fact and conclusions of law did not comply with Rule 73.01(c) as Brownfield did not specify controverted issues as to which findings were requested, and instead made only a generalized request for the trial court to "issue findings of fact and reasons for its decision, under Rule 73.01(c)." A generalized request of this nature cannot be the basis for a claim of trial court error. *Tolu v. Stientjes*, 703 S.W.3d 619, 634 (Mo. App. E.D.

31

2024) (holding that a general request for findings of fact is insufficient to require the trial court to make specific findings under Rule 73.01(c)) (citation omitted).  Because no findings of fact were requested on the issue of estoppel, Brownfield is bound by that portion of Rule 73.01(c) which provides that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *See Tolu*, 703 S.W.3d at 634.

Brownfield cites to evidence that Darrin told S.M. that he knew he did not own Tract II and claims that S.M. relied on this representation to his detriment when he purchased land from D.H.  Brownfield mischaracterizes the evidence about Darrin's conversation with S.M. and ignores competing evidence that supports the Judgment.  The evidence viewed in the light most favorable to the Judgment establishes that D.H. and Darrin knew that they had not executed or recorded a deed in 1995 to document D.H.'s sale of Tract II to Darrin but nonetheless intended the transfer of ownership to take place at that time.  Darrin's later conversation with S.M. was consistent with his awareness that no deed had been filed of record to verify that he was the owner of Tract II.  However, though no deed was recorded in 1995, the trial court concluded that D.H. nonetheless intended to sell Tract II to Darrin in 1995 and that both Darrin and D.H. treated Darrin as the owner of Tract II from and after that time.  Regardless whether the 1995 transaction was sufficient to legally convey title to Tract II to Darrin (an issue the trial court did not decide and that we do not need to address), Darrin and D.H.'s intent to transfer ownership of Tract II at that time was sufficient, as we have already explained, to begin the running of the ten-year period for calculating adverse possession.

32

Moreover, the evidence viewed in the light most favorable to the Judgment establishes that S.M. was aware of Darrin, Angela, and Creighton Storage's claim of ownership to Tract II prior to his purchase of land from D.H. S.M. testified about conversations he had with D.H. and Darrin that caused him to believe that D.H. did not intend to sell Tract II to S.M. because that Tract was meant for Darrin and that the 2013 Survey was being ordered in part to provide a legal description for Tract II so the sale of the Tract to Darrin could be documented. Of course, by this time, Darrin and Angela had already acquired title to Tract II by adverse possession. The lack of a deed documenting the precise land D.H. sold to Darrin in 1995 was not an impediment to Darrin and Angela's use and possession of Tract II in a manner that was consistent with the trial court's determination that they acquired title to the Tract in mid-2005 by adverse possession. Although the lack of a deed in 1995 was an obvious impediment to putting others on actual or constructive notice of D.H.'s intent that Darrin acquire an ownership interest in Tract II in 1995, the fact that D.H. and Darrin sought to remedy that situation with the 2013 Survey is also not inconsistent with the trial court's determination that Darrin and Angela acquired title to Tract II in mid-2005 by adverse possession.

Because we are to assume findings were made by the trial court consistent with the Judgment and because the evidence supports rejection of the defense of estoppel, we find no error in the trial court's failure to make findings in the Judgment on the issue of estoppel.

Point Three is denied.

***The trial court did not commit error by failing to apply the parol evidence rule or the statute of frauds to reject Darrin, Angela, and Creighton Storage's adverse possession claims because Brownfield's claim of error relating to the parole evidence rule is not preserved for our review and because the statute of frauds does not apply to the acquisition of title by adverse possession. (Point Four)***

In Point Four, Brownfield contends that the trial court committed error when it failed to apply the parol evidence rule[12] and/or the statute of frauds[13] to reject Darrin, Angela, and Creighton Storage's claims of adverse possession. Brownfield claims that the 2013 contract between S.M. and D.H. unambiguously conveyed all three tracts of D.H.'s land and that the parol evidence rule barred the admission or consideration of any evidence of the 1995 oral conveyance of Tract II from D.H. to Darrin. Brownfield also argues that the land sale between D.H. and Darrin in 1995 was invalid because the conveyance was not in writing nor signed by either party in violation of the statute of frauds.

Brownfield's fourth point on appeal is impermissibly multifarious as it "groups together multiple, independent claims rather than a single claim of error" in violation of

---

[12]The parol evidence rule is a defense intended to "preserve the sanctity of written contracts" by prohibiting contradictory evidence to vary the terms of a written contract. *STL Riverview Plaza LLC v. Metro. St. Louis Sewer Dist.*, 681 S.W.3d 290, 298 (Mo. App. E.D. 2023) (citation omitted). "In the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits evidence of prior or contemporaneous oral agreements which vary or contradict the terms of an unambiguous, final and complete writing." *Id.* at 299 (citation omitted).

[13]The statute of frauds, or section 432.010 in Missouri, requires certain types of contracts, like contracts for the sale of land, to be made in writing to be enforceable. *See Fuemmeler v. Mike and Mark Farms, LLC*, 703 S.W.3d 249, 263 (Mo. App. W.D. 2024). Whether a writing satisfies the statute of frauds is a question of law, and will only be found if the writing "sets forth the essential terms of the agreement including the parties, the subject matter, the consideration, the price and the promises upon both sides." *Id.* (citation omitted)

Rule 84.04(d). *D.L.C. v. Juv. Officer*, 697 S.W.3d 775, 780-81 (Mo. App. W.D. 2024) (quoting *T.L.L. v. Juv. Officer*, 688 S.W.3d 615, 621 (Mo. App. W.D. 2024)). The effect is to preserve nothing for our review. *Id.* at 781.

Further impeding our review is Brownfield's failure to preserve any claim of error regarding the parol evidence rule by having first raised this issue with the trial court. A careful review of the record reveals that Brownfield never referred to the parol evidence rule in any of his pleadings or at trial nor did he object at trial to the admission of any evidence potentially subject to the rule. As a result, Brownfield's parol evidence argument is not preserved for our review and we will not address the merits of this claim of error. [14] *See Irving v. Angstrom*, 702 S.W.3d 248, 258 (Mo. App. W.D. 2024) ("Arguments not raised before the trial court . . . are not preserved for review on appeal because we will not convict a trial court of error on an issue that was not put before the trial court to decide.") (quoting *Stanton v. City of Skidmore*, 620 S.W.3d 245, 250 (Mo. App. W.D. 2021)); *and see* Rule 78.07(b) (stating that in a bench-tried case, like the case at bar, a motion for new trial is not required to preserve any matter for appellate review "if the matter was ***previously presented to the trial court***") (emphasis added).

---

[14]Though we are not addressing the merits of Brownfield's parol evidence rule claim because it is not preserved for our review, we note that no attempt has been made by Darrin, Angela, or Creighton Storage to reform or modify the terms of the contract between D.H. and S.M. Instead, if the contract between D.H. and S.M. described the land being sold in a way that included Tract II, it is axiomatic that D.H. could not sell what he did not own. The terms of the 2013 contract would not control or take precedence over the trial court's finding that Darrin and Angela acquired title to Tract II by adverse possession in 2005 and that Creighton Storage acquired title to Tract II by tacking its interest to the interest of Darrin and Angela.

Despite the multifarious nature of Brownfield's fourth point on appeal, we exercise our discretion *ex gratia* to review Brownfield's claim of error regarding the statute of frauds claim since Brownfield did identify the statute of frauds as an affirmative defense in his responsive pleadings. *See D.L.C.*, 697 S.W.3d at 781. Brownfield now contends that the sale of Tract II between D.H. and Darrin in 1995 should have been deemed invalid and unenforceable as it was an oral conveyance that did not comply with the statute of frauds. Brownfield argues that if the oral conveyance is disregarded, Darrin had no claim of title to Tract II requiring the trial court to conclude that D.H. legally transferred title to Tract II to S.M. in 2013. Brownfield's reliance on the statute of frauds is misguided.

Evidence regarding the 1995 transaction between D.H. and Darrin explained why and how Darrin and Angela, and then later Creighton Storage, came to possess and use Tract II as their own. The trial court did not find that title to Tract II was successfully conveyed to Darrin by D.H. in 1995. Instead, the trial court specifically found that Darrin and Angela acquired title to Tract II in mid-2005 because their possession of Tract II from and after mid-1995 "was hostile, under a claim of right, actual, open and notorious, exclusive and for a period in excess of ten (10) years prior to the conveyance of Tract II to [S.M.]." Because Darrin, Angela, and Creighton Storage acquired title to Tract II by adverse possession, it is irrelevant whether the 1995 oral conveyance of Tract II would have been unenforceable to convey title because the conveyance violated the statute of frauds.

Point Four is denied.

***The trial court's alleged mistake in referencing property transferred by a deed admitted as an exhibit at trial is not preserved for appellate review and in any event is not a mistake that warrants reversal of the Judgment. (Point Five)***

In Point Five, Brownfield claims that the trial court committed error by including a finding in the background discussion of the Judgment that "Exhibit 3 included Tract II but not Tract III." Exhibit 3 is included in the legal file and is an August 8, 2013 deed from D.H. to S.M. which attaches a legal description for Tract III.

Point Five is an allegation of error "relating to the form ***or the language of the judgment***" and is governed by Rule 78.07(c). (Emphasis added.) Brownfield did not file a Rule 78.07(c) motion bringing the purported error in the language of the Judgment to the trial court's attention. As we have discussed, *supra*, Brownfield's failure to file a Rule 78.07(c) motion to correct the trial court's mistaken finding about the tract conveyed by Exhibit 3 renders his fifth point on appeal unpreserved for appellate review.[15] *See Prosecuting Att'y, 21st Jud. Cir., ex rel. Williams*, 696 S.W.3d at 863-64.

In any event, the import of the Judgment determined controversies between the parties over title to Tract II, not Tract III. The Judgment's mistaken factual reference to the land conveyed by Exhibit 3 has no bearing on the determination of title to Tract II in favor of Darrin, Angela, and Creighton Storage by adverse possession, and could not support affording Brownfield relief from the Judgment. *See* Rule 84.13(b) ("No appellate

---

[15]Though no claim of error is preserved by Brownfield's fifth point on appeal, it is axiomatic that the trial court's factual reference in the background portion of the Judgment does not modify or reform the deeds D.H. executed in favor of S.M. in 2013.

court shall reverse any judgment unless it finds that error was committed by the trial court against appellant materially affecting the merits of the action.").

Point Five is denied.

### *The trial court did not apply an incorrect burden of proof to Darrin, Angela, and Creighton Storage's adverse possession claims. (Point Six)*

In his sixth point on appeal, Brownfield argues that the trial court applied an incorrect burden of proof when it determined that Darrin, Angela, and Creighton Storage acquired title to Tract II by adverse possession. Brownfield's point relied on alleges that the trial court applied a preponderance of the evidence burden of proof when it should have applied a "clear, positive and unequivocal" burden of proof.[16]

In the argument portion of his Brief, Brownfield cites to *Crider v. Meatte* for the proposition that proof of adverse possession must be shown "by clear, distinct, and unequivocal evidence." 7 S.W.2d 691, 694-95 (Mo. 1928). Brownfield completely ignores the Missouri Supreme Court's unequivocal holding in *Watson* that a "party claiming ownership by adverse possession has the burden of proving his claim ***by a preponderance of the evidence***." 298 S.W.3d at 526 (emphasis added) (citing *Shuffit v. Wade*, 13 S.W.3d 329, 335 (Mo. App. S.D. 2000)). *Accord*, *Moore v. Dudley*, 904 S.W.2d 496, 498 (Mo. App. E.D. 1995) (essential elements of an adverse possession

---

[16]Brownfield did not raise this issue with the trial court at any time. On that basis alone, his claim of error is without merit because it was not preserved for our review. "Arguments not raised before the trial court . . . are not preserved for review on appeal" because "[w]e will not convict a trial court of error on an issue that was not put before the trial court to decide." *Loutzenhiser v. Best*, 565 S.W.3d 723, 730 (Mo. App. W.D. 2018) (quotation omitted).

claim must by proven by a preponderance of the evidence); *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo. App. W.D. 1996) (holding that party asserting claim of adverse possession must prove each of the essential elements by a preponderance of the evidence).

Brownfield then argues that "[s]tronger evidence of adverse possession is required in the presence of a family relationship than where no such relationship exists." Brownfield relies on *Tallent v. Barrett*, 598 S.W.2d 602, 606 (Mo. App. S.D. 1980) for this proposition. *Tallent* does not announce a different burden of proof, however, in adverse possession cases involving dispute between family members. Instead, *Tallent* merely recognized that "[w]here there exists a family relationship among the involved parties, that relationship will prevent or rebut a presumption of adverse holding that may arise under similar circumstances involving nonrelated parties." *Id.* That this holding is not intended to announce a different burden of proof is underscored by our holding in *Daniel-Kerr v. Crosby*, 484 S.W.3d 798 (Mo. App. W.D. 2016), where we cited to the aforesaid passage from *Tallent* despite earlier holding that in order to prevail on an adverse possession claim "a claimant must prove by a preponderance of the evidence" the essential elements of adverse possession. *Id.* at 802, 805.

We conclude that the trial court did not apply the wrong burden of proof to the claims of adverse possession asserted by Darrin, Angela, and Creighton Storage when it required proof of the essential elements of an adverse possession claim by a preponderance of the evidence. Even affording Brownfield the benefit of the holding in *Tallent*, the adverse right to ownership exercised by Darrin and Angela over Tract II was

known by D.H., intended by D.H., and unchallenged by D.H., at all times from and after the effort to sell the Tract to Darrin in 1995 and throughout the continuous ten-year period required for adverse possession. The trial court accepted this evidence as credible and we defer to that finding.

Point Six is denied.

## Conclusion

For the reasons herein explained, the trial court's Judgment is affirmed.


_____
Cynthia L. Martin, Judge

All concur

40